UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JESSICA DENSON

-against-

DONALD J. TRUMP FOR PRESIDENT, INC.

_____CV_____

**COMPLAINT**

# 18 CV 2690

## I.   BASIS FOR JURISDICTION

Diversity of Citizenship

> The plaintiff, Jessica Denson, is a citizen of the State of California.
> The defendant, Donald J. Trump for President, Inc., is a citizen of the
> Commonwealth of Virginia, and has its principal place of business at 725
> Fifth Avenue, New York, New York 10022.

## II.   PARTIES

**A. Plaintiff**
Jessica M. Denson
3925 Big Oak Drive, #4
Los Angeles County, Studio City, CA 91604
(310) 927-2300

**B. Defendant**
Donald J. Trump for President, Inc.
725 Fifth Avenue
New York County, New York, NY 10022

## III.   STATEMENT OF CLAIM

Place of occurrence: New York, NY
Dates of occurrence: August 18, 2016 - Present

**FACTS:**

On August 18, 2016, the Plaintiff was offered employment with the Defendant as a
National Phone Bank Administrator.   That offer of employment was conditioned on Plaintiff
signing a Non-Disclosure Agreement ("NDA") (see Exhibit A).   The key operative provision of

the NDA was that the Plaintiff was not to disclose, disseminate, or publish any "confidential information," which was defined as "all information … of a private, proprietary or confidential nature or that Mr. Trump insists remain private or confidential, including, but not limited to, any information with respect to the personal life, political affairs, and/or business affairs of Mr. Trump or of any Family Member…." By its terms, the NDA is governed by the laws of the State of New York. The Plaintiff was not required to sign an employment agreement.

On November 14, 2017, the Plaintiff filed an employment discrimination and defamation lawsuit against Donald J. Trump for President, Inc. in New York Supreme Court (101616-17) (see Exhibit B).   The case alleges, inter alia, that during the Plaintiff's employment by the Defendant, she was discriminated against, harassed, and made subject to a hostile work environment, as well as defamed and subject to the intentional infliction of emotional distress. The complaint in the state action contains no allegations whatsoever pertaining to the personal life or business affairs of Donald Trump or any of his family members or businesses. The complaint relates solely to unlawful actions taken, and statements made, by various employees of the Defendant during the course of Plaintiff's employment.

The Defendant, under the arbitration provision of the NDA, submitted a demand for arbitration with the American Arbitration Association on December 20, 2017 (case 01-07-0007-6454), seeking a ruling that the Plaintiff's state court lawsuit is a breach of the NDA (see Exhibit C).

**CLAIMS:**

The Plaintiff is seeking a declaratory judgment from this Court declaring that the NDA is unenforceable to the extent it is utilized, as here, to thwart or prohibit the assertion of legal rights in a lawsuit. Thus, the NDA is void because it violates public policy. The NDA is also void because its definition of "confidential information" is so vague and overly broad that it fails to place employees who are required to sign the NDA on notice of what information is "confidential."

In effect, the Defendant has weaponized the NDA by using it as a club to thwart and chill employees' assertion that Defendant has violated their legal rights in the course of their employment by Defendant.

IV.   **RELIEF**

The Plaintiff seeks declaratory relief that the NDA is void and unenforceable.

V.   **PLAINTIFF'S CERTIFICATION AND WARNINGS**

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a non-frivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

   I agree to notify the Clerk's Office in writing of any changes to my mailing address.   I understand that my failure to keep a current address on file with the Clerk's Office may result in dismissal of my case.

March 26, 2018

Jessica M. Denson
3925 Big Oak Drive, #4
Los Angeles County, Studio City, CA 91604
(310) 927-2300

# AGREEMENT

You have requested that the entity signing below (the "**Company**") engage you (as an employee or an independent contractor, as applicable) to perform services, or an independent contractor that employs you has requested to be engaged by Company to perform services and you desire in your capacity as an employee of such independent contractor to perform all or a part of such services. You have made the promises and agreements set forth below in order to induce the Company to accept your or your employer's, as applicable, offer of engagement and to permit you, in the applicable capacity, to perform all or a portion of the subject services. Those promises and agreements are part of what the Company is receiving in exchange for agreeing to engage you or your employer, and to permit you to perform all or a portion of the subject services, and the Company is relying on your fulfillment of these promises and agreements.

Any initially capitalized terms that are not defined when used in this agreement are defined in paragraph 6 below.

     1.    <u>No Disclosure of Confidential Information</u>. During the term of your service and at all times thereafter you hereby promise and agree:

    a.  not to disclose, disseminate or publish, or cause to be disclosed, disseminated or published, any Confidential Information;

    b.  not to assist others in obtaining, disclosing, disseminating, or publishing Confidential Information;

    c.  not to use any Confidential Information in any way detrimental to the Company, Mr. Trump, any Family Member, any Trump Company or any Family Member Company;

    d.  not to save, store or memorialize any Confidential Information (including, without limitation, incorporating it into any storage device, server, Internet site or retrieval system, whether electronic, cloud based, mechanical or otherwise) except as may be expressly required in connection with the performance of services to the Company;

    e.  to (i) provide the Company with written notice of any legal obligation to disclose any Confidential Information as soon as you become aware of such obligation, (ii) not make any disclosure notwithstanding such obligation until the Company (or the appropriate Trump Person) has had a reasonable opportunity to seek an appropriate protective order or similar relief, (iii) fully cooperate and join with the Company (and the appropriate Trump Person) in any request for a protective order or similar relief, (iv) exercise all reasonable efforts to obtain reliable assurance that confidential treatment will be accorded such Confidential Information in the event no such protective order or similar relief is obtained, whether because it has been denied or because the Company (or the appropriate Trump Person) has elected not to seek it, and (iv) under all circumstances, not furnish any greater portion of the Confidential Information than you are advised by counsel is absolutely legally required to be disclosed by you or furnish any Confidential Information to any individual, company or governmental entity other than the one to whom or to which you are absolutely legally required to disclose it; and

f.   promptly upon the request, whenever made, of the Company, (i) return to the Company all Confidential Information furnished to you, together with all copies, abstracts, notes, reports, or other materials furnished to, or otherwise obtained by, you or prepared by you or on your behalf, without retaining copies, extracts or other reproductions, whether physical, electronic, cloud based or otherwise, in whole or in part, (ii) destroy all documents, memoranda, notes or other writings prepared by you or anyone on your behalf that are based upon the Confidential Information, and (iii) acknowledge such destruction in writing to Company.

The foregoing provisions each apply to Confidential Information and disclosure, dissemination, publication, use and effort to help others obtain, saving, storing and memorializing of Confidential Information, as applicable, (i) by any means of expression, including but not limited to verbal, written, or visual, (ii) whether or not preserved in any medium now known or hereafter discovered or invented, including but not limited to audio recording of any type, written text, drawing, photograph, film, video, or electronic device, (iii) in any manner or form, including but not limited to any book, article, memoir, diary, letter, essay, speech, interview, panel or roundtable discussion, image, drawing, cartoon, radio broadcast, television broadcast, video, movie, theatrical production, Internet website, e-mail, Twitter tweet, Facebook page, or otherwise, even if fictionalized, (iv) in any language, or (v) in any country or other jurisdiction (collectively, the "**Restricted Means and Contexts**").

2.   <u>No Disparagement</u>.  During the term of your service and at all times thereafter you hereby promise and agree not to demean or disparage publicly the Company, Mr. Trump, any Trump Company, any Family Member, or any Family Member Company or any asset any of the foregoing own, or product or service any of the foregoing offer, in each case by or in any of the Restricted Means and Contexts and to prevent your employees from doing so.

3.   <u>No Competitive Services</u>.  Until the Non-Compete Cutoff Date you promise and agree not to assist or counsel, directly or indirectly, for compensation or as a volunteer, any person that is a candidate or exploring candidacy for President of the United States other than Mr. Trump and to prevent your employees from doing so.

4.   <u>No Competitive Solicitation</u>.  Until the Non-Solicitation Cutoff Date you promise and agree not to hire or solicit for hiring, or assist any other person, entity or organization to hire or solicit for hiring, any person that is an independent contractor of, employee of an independent contractor of, or employee of Company or any other Trump Person and who at any time provides services for the project or objective for which you or your employer, as applicable, are being engaged.

5.   <u>No Competitive Intellectual Property Claims</u>. During the term of your service and at all times thereafter you promise and agree never to assert any rights to any intellectual property that (a) includes the name "Trump," (b) is owned by or associated with the Company, Mr. Trump, any Trump Company, any Family Member or any Family Member Company, for example, without limitation, any name, likeness, voice, or image of Mr. Trump or any Family Member, or any logo, motto or phrase created, developed or commonly associated with any of them, or (c) is developed in connection with the project or objective for which your services are

being engaged (all of which will be deemed a "work made for hire" or will be assigned by you to us).

6.      Definitions.  As used in this agreement, the following definitions apply:

a.      **"Confidential Information"** means all information (whether or not embodied in any media) of a private, proprietary or confidential nature or that Mr. Trump insists remain private or confidential, including, but not limited to, any information with respect to the personal life, political affairs, and/or business affairs of Mr. Trump or of any Family Member, including but not limited to, the assets, investments, revenue, expenses, taxes, financial statements, actual or prospective business ventures, contracts, alliances, affiliations, relationships, affiliated entities, bids, letters of intent, term sheets, decisions, strategies, techniques, methods, projections, forecasts, customers, clients, contacts, customer lists, contact lists, schedules, appointments, meetings, conversations, notes, and other communications of Mr. Trump, any Family Member, any Trump Company or any Family Member Company.

b.      **"Family Member"** means any member of Mr. Trump's family, including, but not limited to, Mr. Trump's spouse, each of Mr. Trump's children and grandchildren and their respective spouses, including but not limited to Donald J. Trump Jr., Eric F. Trump and Ivanka M. Trump, Tiffany Trump, and Barron Trump, and their respective spouses, children and grandchildren, if any, and Mr. Trump's siblings and their respective spouses and children, if any.

c.      **"Family Member Company"** means any entity, partnership, trust or organization that, in whole or in part, was created by or for the benefit of any Family Member or is controlled or owned by any Family Member.

d.      **"Non-Compete Cut Off Date"** means the date the current U.S presidential election cycle is over or, if earlier, the date Mr. Trump announces that he will not run or will no longer run for the Presidency of the United States of America in the current U.S. presidential election cycle.

e.      **"Non-Solicitation Cutoff Date"** means the Non-Compete Cut Off Date.

f.      **"Trump Company"** means any entity, partnership, trust or organization that, in whole or in part, was created by or for the benefit of Mr. Trump or is controlled or owned by Mr. Trump.

g.      **"Trump Person"** means each of Mr. Trump, each Family Member, each Trump Company (including but not limited to the Company) and each Family Member Company.

7.      Remedies for Breach of this Agreement.

a.      Consent to Injunction.  A breach of any of your promises or agreements under this agreement will cause the Company, Mr. Trump and each other Trump Person irreparable harm. Accordingly, to the extent permitted by law, and without waiving any other rights or remedies against you at law or in equity, you hereby consent to the entry of any order, without prior notice

to you, temporarily or permanently enjoining you from violating any of the terms, covenants, agreements or provisions of this agreement on your part to be performed or observed.  Such consent is intended to apply to an injunction of any breach or threatened breach.

b.  <u>Agreement to Indemnify</u>.  You hereby agree to indemnify, defend (with counsel acceptable to the Trump Person you are defending) and hold harmless each Trump Person from and against any claim, demand, suit, proceeding, damages, cost, loss or expense of any kind or nature, including but not limited to reasonable attorneys' fees and disbursements, incurred by any Trump Person as a consequence of your breach of any of your promises or agreements in this agreement.

c.  <u>Damages and Other Remedies</u>.  Notwithstanding anything to the contrary, each Trump Person will be entitled to all remedies available at law and equity, including but not limited to monetary damages, in the event of your breach of this agreement. Nothing contained in this agreement will constitute a waiver of any Trump Person's remedies at law or in equity, all of which are expressly reserved.

d.  <u>Third Party Beneficiaries</u>.   Mr. Trump and each Family Member, Trump Company and Family Member Company is an intended third party beneficiary of this agreement. Without limiting the preceding sentence, Mr. Trump, each Family Member, Trump Company and Family Member Company, in addition to the Company, will be entitled to the benefit of this agreement and to enforce this agreement.

8.   <u>Resolution of Disputes</u>.

a.  <u>Governing Law; Jurisdiction and Venue</u>.  This Agreement is deemed to have been made in the State of New York, and any and all performance hereunder, breach hereof, or claims with respect to the enforceability of this agreement must be interpreted and construed pursuant to the laws of the State of New York without regard to conflict of laws or rules applied in the State of New York.  You hereby consent to exclusive personal jurisdiction and venue in the State of New York with respect to any action or proceeding brought with respect to this agreement.

b.  <u>Arbitration</u>.  Without limiting the Company's or any other Trump Person's right to commence a lawsuit in a court of competent jurisdiction in the State of New York, any dispute arising under or relating to this agreement may, at the sole discretion of each Trump Person, be submitted to binding arbitration in the State of New York pursuant to the rules for commercial arbitrations of the American Arbitration Association, and you hereby agree to and will not contest such submissions. Judgment upon the award rendered by an arbitrator may be entered in any court having jurisdiction.

c.  <u>Prevailing Party Fees</u>.  Any court judgment or arbitration award shall include an award of reasonable legal fees and costs to the prevailing party.

d.  <u>Interpretation and Representation by Counsel</u>.  This agreement has been drafted on behalf of the undersigned only as a convenience and may not, by reason of such action, be construed against the undersigned. Each of the parties (i) has had the opportunity to be and/or

has elected not to be, represented by counsel, (ii) has reviewed each of the provisions in this agreement carefully and (iii) has negotiated or has had full opportunity to negotiate the terms of this agreement, specifically including, but not limited to Paragraph 7 hereof.  You waive any claims that may be available at law or in equity to the effect that you did not have the opportunity to so consult with counsel.

e. <u>No Waiver</u>.  Neither the failure or delay to exercise one or more rights under this agreement nor the partial exercise of any such right, will be deemed a renunciation or waiver of such rights or any part thereof or affect, in any way, this agreement or any part hereof or the right to exercise or further exercise any right under this agreement or at law or in equity.

9.   <u>Miscellaneous</u>.  **Modifications**. No change or waiver of the terms, covenants and provisions of this agreement will be valid unless made in writing and signed by the undersigned. **Relationship**.  Nothing herein contained is intended to, nor shall it be construed as, reflecting any employer-employee or independent contractor relationship between you and the undersigned or any other individual or entity. **Counterparts**.  This agreement may be executed in any number of counterparts, all of which taken together will constitute one and same instrument.  Delivery of an executed signature page of this this agreement by facsimile transmission or .pdf, .jpeg, .TIFF, or other electronic format or electronic mail attachment will be effective as delivery of an original executed counterparty hereof.

10.   <u>Survival</u>.  This agreement will survive the expiration, cancellation or termination of any employment or independent contractor relationship that you may have with the Company or with any individual, entity, partnership, trust or organization that the Company has engaged.

Donald J. Trump for President


_____

Name: LUCIA CASTELLANO
Title:  HR DIRECTOR

JESSICA MARIE DENSON **ACKNOWLEDGES THAT SHE HAS READ AND UNDERSTOOD THIS AGREEMENT, AND AGREES TO COMPLY WITH THE FOREGOING WHICH CREATES A VALID AND BINDING LEGAL OBLIGATION ON HER.**

Jessica Marie Denson

Signature: _____
Name: Jessica Marie Denson
Address:  8306 Wilshire Blvd. #310
Beverly Hills, CA 90211

[Print in *black* ink all areas in bold letters. This summons *must* be served with a complaint.]

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-------------------------------------------------------------x

Jessica Denson

**[your name(s)]**                    Plaintiff(s)

- against -

Donald J. Trump for President, Inc.

**[name(s) of party being sued]**      Defendant(s)

-------------------------------------------------------------x

**SUMMONS**

**Index Number**

101616-17   N/F

**Date Index Number purchased**

11/14 , 2007

To the Person(s) Named as Defendant(s) above:

PLEASE TAKE NOTICE THAT YOU ARE HEREBY SUMMONED to answer the complaint of the plaintiff(s) herein and to serve a copy of your answer on the plaintiff(s) at the address indicated below within 20 days after service of this Summons (not counting the day of service itself), or within 30 days after service is complete if the Summons is not delivered personally to you within the State of New York.

YOU ARE HEREBY NOTIFIED THAT should you fail to answer, a judgment will be entered against you by default for the relief demanded in the complaint.

Dated: November 9 , 2007
**[date of summons]**

**[sign your name]**

Jessica Denson
**[print your name]**

1060 W. Pipeline Road
Suite 110
Hurst, TX 76053   (972)249-8253
**[your address(es), telephone number(s)]**

**FILED**
NOV. 14 2017,
COUNTY CLERKS OFFICE
NEW YORK

Defendant(s) Donald J. Trump for President, Inc.
725 Fifth Ave.
New York, NY 10022

**[address(es) of defendant(s)]**

Venue: Plaintiff(s) designate(s) New York County as the place of trial. The basis of this designation is: [check box that applies]
☐ Plaintiff(s) residence in New York County
☑ Defendant(s) residence in New York County
☐ Other [See CPLR Article 5]: _____

7-00

SUPREME COURT OF THE STATE OF NEW YORK,
COUNTY OF NEW YORK

————————————————————————x

JESSICA DENSON,

                                    Plaintiff,                    Index No. 101 616-17

          -against-                                              COMPLAINT

DONALD J. TRUMP FOR PRESIDENT, INC.

                                    Defendant.

————————————————————————x

TO THE SUPREME COURT OF THE STATE OF NEW YORK

     The complaint of the plaintiff, Jessica Denson ("Denson" or "Plaintiff"), respectfully

shows and alleges as follows:

## PARTIES

     1. The plaintiff herein, Jessica Denson, was employed by the Donald J. Trump for

President campaign during the 2016 presidential election.

     2. Denson is a summa cum laude graduate of the George Washington University, an

award-winning journalist, and a member of SAG-AFTRA with film and TV credits, and a

lifelong advocate for the bullied and voiceless, both human and animal.

     3. The defendant herein, Donald J. Trump for President, Inc. ("the campaign"), has a

principal place of business at 725 Fifth Avenue, New York, NY 10022.

## NATURE OF THE CASE

     4. This case arises from violations by the campaign of New York state law prohibiting

defamation and defamation per se; New York City Human Rights Law, New York City

Administrative Code § 8-107; and the torts of intentional and negligent infliction of emotional

distress. The campaign has unlawfully protected the harassment and sexual discrimination of a

former male superior of the Plaintiff, Camilo Jaime Sandoval, who targeted the plaintiff because she was a woman who received a promotion out from under his control by the campaign CEO. The campaign compounded a slander crusade executed by Sandoval against Denson, including the claim that she was responsible for an illegal leak of Donald Trump's taxes, and extended his assault, step-by-step thwarting and eliminating her very ability to perform the tasks she had been given, and perpetuating a climate of fear and terror for the extent of her employment and beyond.

5.  When Denson reported Sandoval's severe and pervasive slander, aggravated harassment, attempted theft, cyberbullying, and sexual discrimination and harassment based on disturbance with her promotion, the campaign retaliated against Denson by severely diminishing the conditions and scope of her employment and preventing her from career advancement.

6.  Throughout and beyond her employment, the campaign further harassed and discriminated against Denson, and endorsed and extended the defamatory characterization of her as one who is a threat and danger to her colleagues, future members of the White House administration, and the President of the United States.

CLAIM

7. On August 18, 2016, plaintiff Jessica Denson was hired as a national phone bank administrator on the Donald J. Trump for President campaign by data director Camilo Jaime Sandoval.

8.  Beginning work on August 22, 2016, Sandoval routinely overworked Denson, requiring that she arrive in the morning, but allowing her to sit idle for hours, even outright ignoring her requests for tasks to work on, and then coming up with assignments at the end of the work day that would require her to stay late into the evening hours.  Under Sandoval's

supervision, Denson was required to work seven days per week at an average of ten hours per day, more than any other staffer in her position.

9. Denson also assumed a full-time assignment for campaign manager Kellyanne Conway shortly after her hire.

10. On September 1, 2016, a Spanish-speaker was needed to translate for a critical campaign event. Sandoval (a Spanish-speaker himself) deferred to Denson (also a Spanish-speaking Hispanic) to complete the task, saying that he preferred to "stay behind the scenes."

11. As a result of the Plaintiff's excellent work on this task, on September 3, 2016, campaign CEO Stephen Bannon, removed the Plaintiff from the data department to mobilize the campaign's Hispanic engagement effort, making her the only staffer dedicated to this task on a national level.

12. When Denson informed Sandoval of her promotion, he asked her male supervisor Ron Wilson in front of her, "Why are you letting your sheep wander?" - referring to the Plaintiff as Wilson's "sheep." Sandoval also stated with teeth clenched and in a threatening, domineering and intimidating manner, "I hired you and I can fire you."

13. At least this early on, the campaign was aware of Sandoval's harassment, which resulted in the female who replaced Denson being removed from data as well, only days after she was hired, after she reported being subjected to a hostile tirade from Sandoval.

14. On September 16, 2016, after contributing to various critical tasks as directed by Bannon, Denson received a significant salary increase and assumed the role of Hispanic Engagement Director.

15. Between September 8 and September 26, 2016, Denson launched the campaign's

Hispanic engagement effort: fueling a Spanish-language digital ad campaign, successfully advocating for critical foreign policy stances, assembling a team effort among Spanish-speaking staffers, coming up with the official Spanish campaign slogan (¡Vive el Sueño Americano!), developing bilingual campaign literature, launching an official Team Trump Twitter account in Spanish, supporting Hispanic engagement events in targeted states, and providing a crucial link between the national campaign and ground efforts for Hispanic engagement. Denson became acquainted with and began to work collaboratively with Arlene (AJ) Delgado, a more recently hired campaign surrogate and senior advisor. During this time and since her hiring, Denson enjoyed growing mutual respect among her colleagues in Trump Tower, and exceptionally positive feedback from the field.

16. During the week of September 26, 2016, Delgado displayed a sudden shift in behavior and subsequently usurped the Plaintiff's position in the campaign, henceforth calling herself, "Hispanic Outreach Director."

17. On October 1, 2016, upon arrival to Colorado for campaign travel, the Plaintiff was urgently alerted by two data staffers, one of whom witnessed a phone call placed on speaker by Sandoval in the campaign's data office, that an aggressive conspiracy was underway between Sandoval and Delgado to sabotage her personally and professionally, including "tracking" Denson's whereabouts, trying to "find dirt" on her, "getting Secret Service involved," and finding a way to "get her fired." The staffer also disclosed at that time that since Denson's promotion Sandoval would routinely make derogatory and demeaning comments about her to others in the data department. That evening Denson sent a brief, urgent email to Conway and Bannon notifying them of the phone call, but neither replied.

18. The following day, October 2, 2016, Sandoval executed an assault that included:

     a. starting a rumor that she was responsible for the October 2016 leak of Donald Trump's taxes, a crime against the very candidate whom she was working to elect;

     b. attempting to have another staffer be complicit in theft of the Plaintiff's personal laptop and personal files that she had left at the home of a friend she had worked with in the data department for safe keeping. Sandoval and Wilson told this friend to bring these items to work with her because, "Jessica is in trouble and you should separate yourself from her;"

     c. blocking the Plaintiff's access to the national supporter database that she used to support Hispanic coalitions;

     d. and cyberbullying the Plaintiff by making multiple unauthorized attempts to reset the password on the Spanish Twitter account solely authorized to the Plaintiff by campaign officials and registered to her phone.

19. On October 2, 2016, Denson reported the above and made urgent and repeated attempts to receive aid from senior campaign officials, including COO Jeff DeWit, but was ignored.

20. On the morning of October 3, 2016, a GOP colleague driving Denson to the rally she had travelled to Colorado for, was contacted and told that he should abandon her at her hotel and keep her away from the candidate at the rally.

21. On the evening of October 3, 2016, DeWit ordered that Denson fly back to New York to address "serious allegations," and on October 4, 2016 Denson did so.

22. On the morning of October 5, 2016, in an obligatory meeting with human resources director Lucia Castellano, Castellano was antagonistic towards Denson from the outset. Denson

came accompanied by the other female staffer who was bullied by Sandoval to explain the

similar nature of his sexual discrimination and harassment, but Castellano exclaimed, "Not her!"

and instead required that Denson speak with her in the presence of two other male staffers.

23.  Denson specifically recounted Sandoval's assault and harassment, and answered

Castellano's questions, which were primarily concerned with how she was hired, why she was

promoted, and the depth of her relationships with friends on the campaign.  Castellano argued the

Plaintiff was not qualified for her position, and demanded to know if she was meeting with

campaign donors.  When Denson said she was not, but had only been videotaping supporters for

digital ads, Castellano was determined to make a fact of the slanderous accusation of

unauthorized donor meetings, and quipped back, "You can't meet with donors!!"

24.  Castellano did not express concern over Sandoval's attempts to illegally obtain the

Plaintiff's personal belonging.  She rather expressed great alarm while reading a transcript of a

voicemail left by the Plaintiff's mother warning Sandoval that if he did not cease his attempts the

law would be invoked (only after the campaign had failed to respond to her daughter's pleas for

help), and said of the voicemail message, "That's bad!!"

25.  Following her meeting with the Plaintiff, Castellano, instead of making it clear that

Sandoval's attempted criminal activity, slander, and harassment was not to be tolerated in a

presidential campaign, retaliated against the Plaintiff with further harassment, discrimination,

and marginalization:

a.  excusing and covering up Sandoval's unauthorized attempts to access a Twitter

account solely assigned to the Plaintiff, and the compromising of that account that occurred

simultaneously while the Plaintiff experienced irregular and repeated remote rebooting of her

iPhone;

      b.  failing to squash Sandoval's broader false characterization of the Plaintiff to all possible campaign staff, including to a relative of Governor Pence, as one whom they should be "careful of" and "distance themselves from," the full scope and substance of which is not to this day even fully known by the Plaintiff;

      c.  eviscerating the Plaintiff's scope of work and ordering that she spend the remainder of the campaign in Colorado, even after confirming other arrangements;

      d.  humiliating the Plaintiff and causing her to be ostracized by her colleagues;

      e.  prohibiting any possible future contact between the Plaintiff and the candidate, who on previous occasions had shown great respect and appreciation for the Plaintiff and her work.

      26.  On October 9, 2016, a week after Denson's reporting of the coordinated assault, in response to none other than Denson's request for this flight change as directed by Conway in the presence of deputy campaign manager David Bossie, COO Jeff DeWitt published a libelous email to at least four other staffers that Denson had "wasted campaign money" and was banned from Trump Tower effective immediately, without *any* explanation. The Plaintiff *never once* wasted campaign money, but on the contrary saved the campaign money on multiple occasions.

      27.  On October 9, 2016 Denson immediately reached out to Conway and Bossie for intervention, and was ignored by both.

      28.  During the week of October 10, 2016, and in fact until her employment ended, Denson was both physically ill and greatly distressed due to the dismissal of her serious report of violations in her workplace - a presidential campaign, and subsequent retaliation by the

campaign, specifically Castellano and DeWit.  After multiple ignored requests for this behavior

to be explained and answered, the Plaintiff maintained her employment with the campaign under

duress for the sole purpose of protecting the candidate, presuming that he was not aware of or

endorsing these actions, and fearing that seeking outside aid may harm his chances in the

election.

   29.  Castellano or DeWit at no point terminated the Plaintiff's at-will employment, but

retaliated against the Plaintiff, perpetuating a climate of fear and torment for the Plaintiff and her

family whilst treating her as a threat and danger to Donald Trump for the duration of the

campaign, by:

   a.  Narrowing Denson's scope of work to one minor task, effectively eliminating

her ability to continue any legitimate contribution to Hispanic engagement, expand the progress

made thus far, or continue any meaningful professional development;

   b.  Repeatedly changing the travel arrangements agreed upon for Denson, and

then portraying her questioning of these changes as an inability to "follow direction" and

characterizing her as "disrespectful and unprofessional."

   c.  Causing new superiors to prohibit Denson from attending campaign events, in

particular where a member of the Trump family was present;

   d.  Disabling Denson's ability to perform even the limited task she had been

reduced to by permitting Sandoval to continue to block her access to the supporter database.

   e. Conway and Bannon made apparent subsequent attempts to have Denson join

the campaign's women's tour, spearhead other projects, and regain a healthy and positive role in

the campaign, but both allowed Castellano and DeWit to trump their authority and restrain

Denson in a feckless and degrading - virtually non-existent - position for the remainder of the campaign;

30.   Castellano also specifically engaged in menacing and inconsistent communications and threats to the Plaintiff, including:

a. notifying an excessive number of staffers of her private hotel accommodations;

b. telling the Plaintiff, while she was driving her campaign-provided rental car, that it was about to be reported stolen, putting the Plaintiff in fear of arrest for possession of a stolen vehicle.  This was false as verified by the rental company;

c. suggesting that the Plaintiff was in possession of a campaign phone distributed by Sandoval that never existed;

d.  when Denson refuted the defamation being made about her by Sandoval to another staffer, threatening Denson not to make any such defense or comment about Sandoval; and

e. Failing to investigate the disappearance of a laptop charger that may have implicated one or more individuals in unauthorized access to Denson's personal laptop in Trump Tower, and refusing to reimburse Denson for the loss of that item.

31.   In the morning hours of November 9, 2016, the campaign's defamation spread to a Secret Service agent, who approached the Plaintiff at the election night victory party and told her she had to leave, after three hours in attendance, just prior to the candidate's victory and arrival. Only because the brother of the candidate, who had been in the Plaintiff's company for much of the night, stepped in and said, "She's with us," did the Secret Service agent finally leave her alone.

32. On November 10, 2016, the last day of Denson's employment, she sent emails from her work account requesting from Castellano that she be able to recover items left on her desk before she was banned from Trump Tower, as well as a non-spoilation notice to preserve the surveillance camera footage from the night her personal laptop charger went missing. Immediately after sending that notice, the Plaintiff's access to her work email ceased, a discriminatory act against her, whereas all other staffer's access continued into the following week by means of which they received invitations to apply for administration positions.

33. On November 16, 2016, Denson again reached out to Bannon, who responded that Denson had done "great work" and he had given her name to the Presidential Transition Team.

34. On November 22, 2016, Bannon offered Denson a job on the Transition Team in an email copied to a leading member of the transition. That individual immediately responded confirming that they would "find the right fit" for Denson and speak the next day, but the offer vaporized. Despite multiple attempts in the following days, weeks, and month to reach this individual, he never responded, confirming that the campaign's defamation of her reputation had at some point on or after November 23, 2016 reached this individual as well, and Denson was successfully blocked from assuming any position.

35. Denson made only positive, legal and uplifting contributions to the campaign, yet her prospect for work-reward was definitively annihilated and her character defamed on all possible levels. The sexual discrimination and harassment of a domineering male superior who targeted her because she was a woman, referring to her as another man's "sheep," was allowed to prevail even after she was promoted, and his hostile work environment was concealed, validated and extended by the human resources of the campaign, which served as an instrument to further

defame and intentionally torment the Plaintiff through shame and fear at every opportunity. Sandoval's hostility, assaults and defamation were not only fully supported during the campaign, but he was further rewarded with a personnel position on the Presidential Transition Team, and Sandoval subsequently acquired a senior post in the Treasury department of the Trump administration.  Castellano received a similar post in the Small Business Administration.

36.  DeWit's defamatory statements and actions, which became known to a large number of campaign staffers, the United States Secret Service, and future members of the Trump administration, served to extend the character assassination launched by Sandoval and Delgado, falsely portraying the Plaintiff as wasteful, distrustful, and as a danger and threat in the eyes of these individuals and organizations.

37.  By reason of the facts and circumstances stated above, the campaign caused Denson severe emotional distress, fear of continued cyber-invasion and unwarranted invasion of privacy, and immense loss of opportunity - derailing her professional work and defaming her character.

38.  Denson was specifically prohibited from assuming a position she was offered on the Presidential Transition Team, and deprived of every natural progression of personal and professional relationships resulting from her positive and substantial contributions to the campaign of the future President of the United States.  Furthermore, due to the wanton and reckless acts committed under the auspices of a presidential campaign, the Plaintiff fears, including but not limited to,

unknown damage to her reputation in official records that could cause arbitrary and significant

harm to her regardless of her career path moving forward.

    39. WHEREFORE, Plaintiff demands judgment against the campaign in the sum of

$25,000,000.00, to include:

    A. Compensatory damages, including lost compensation, lost opportunity, damage to

career path, damage to reputation and pain and suffering damages;

    B. Damages for mental anguish;

    C. Punitive damages;

    D. Attorneys fees and costs of suit;

    E. Such other relief as the court may deem equitable and just.

Dated: November 9, 2017

                        Jessica Denson
                        Pro Se
                        1060 W. Pipeline Rd, Suite 110
                        Hurst, TX 76053
                        972-249-8253

## VERIFICATION

Jessica Denson, being duly sworn, deposes and says:

    I am the plaintiff in the above-entitled action. I have read the foregoing complaint and know the contents thereof. The same are true to my knowledge, except as to matters therein stated to be alleged on the information and belief and as to those matters I believe them to be true.

State of New York ) ss
County of New York )

Sworn to before me this

10 day of 11 2017

Notary Public

                        Jessica Denson
                        11/10/2017

LILY YONG ZHENG
STATE OF NEW YORK
NOTARY PUBLIC
Qualified in Queens County
01ZH6285347
MY COMMISSION EXPIRES 07/31/2021

COPY

AAA Case No.
01-07-0007-6454



AMERICAN ARBITRATION ASSOCIATION® | INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION®

**COMMERCIAL ARBITRATION RULES**
**DEMAND FOR ARBITRATION**

*For Consumer or Employment cases, please visit **www.adr.org** for appropriate forms.*

You are hereby notified that a copy of our arbitration agreement and this demand are being filed with the American Arbitration Association with a request that it commence administration of the arbitration. The AAA will provide notice of your opportunity to file an answering statement.

| Name of Respondent: JESSICA DENSON | Name of Representative (if known): |
|---|---|
| Address: 1060 W. Pipeline Road, Suite 110 | Name of Firm (if applicable): |
| | Representative's Address: |

| City: Hurst | State: TX | Zip Code: 76053 | City: | State: | Zip Code: |
|---|---|---|---|---|---|
| Phone No.: 972-249-8253 | Fax No.: | | Phone No.: | Fax No.: | |
| Email Address: | | | Email Address: | | |

The named claimant, a party to an arbitration agreement which provides for arbitration under the Commercial Arbitration Rules of the American Arbitration Association, hereby demands arbitration.

Brief Description of the Dispute:

A brief description of the dispute is attached as Exhibit A.

| Dollar Amount of Claim: $ 1,500,000 | Other Relief Sought:<br>☑ Attorneys Fees ☑ Interest ☑ Arbitration Costs<br>☑ Punitive/ Exemplary ☐ Other |
|---|---|
| Amount enclosed: $ 7,000.00 | In accordance with Fee Schedule: ☐ Flexible Fee Schedule ☑ Standard Fee Schedule |

Please describe the qualifications you seek for arbitrator(s) to be appointed to hear this dispute:

Commercial law qualifications.

| Hearing locale: New York, NY | (check one) ☐ Requested by Claimant ☑ Locale provision included in the contract |
|---|---|
| Estimated time needed for hearings overall:<br>hours or 3 days | Type of Business: Claimant: Corporation<br>Respondent: Individual |

Are any parties to this arbitration, or their controlling shareholder or parent company, from different countries than each other? NO

| Signature (may be signed by a representative): | Date: 12-20-17 |
|---|---|
| Name of Claimant: Donald J. Trump for President, Inc. | Name of Representative: Lawrence S. Rosen |
| Address (to be used in connection with this case): 725 Fifth Avenue c/o LaRocca Hornik Rosen Greenberg & Blaha LLP | Name of Firm (if applicable): LaRocca Hornik Rosen Greenberg & Blaha LLP |
| | Representative's Address: 40 Wall Street, 32nd Floor |

| City: New York | State: NY | Zip Code: 10022 | City: New York | State: NY | Zip Code: 10005 |
|---|---|---|---|---|---|
| Phone No.: | Fax No.: | | Phone No.: 212-530-4822 | Fax No.: | |
| Email Address: | | | Email Address: LROSEN@LHRGB.COM | | |

To begin proceedings, please send a copy of this Demand and the Arbitration Agreement, along with the filing fee as provided in the Rules, to: American Arbitration Association, Case Filing Services, 1101 Laurel Oak Road, Suite 100 Voorhees, NJ 08043. At the same time, send the original Demand to the Respondent.

*Please visit our website at www.adr.org if you would like to file this case online. AAA Case Filing Services can be reached at 877-495-4185.*

## EXHIBIT A

Donald J. Trump for President, Inc. v. Jessica Denson

Respondent breached confidentiality and non-disparagement obligations contained in a written agreement she executed during her employment with claimant Donald J. Trump for President, Inc. She breached her obligations by publishing certain confidential information and disparaging statements in connection with a lawsuit she filed against claimant in New York Supreme Court. Claimant is seeking compensatory damages, punitive damages, and all legal fees and costs incurred in connection with this arbitration.