# JESSICA DENSON

August 20, 2018

Jessica Denson
3925 Big Oak Drive, #4
Studio City, Ca. 91604

RE: Pending motion
Jessica Denson v. Donald J. Trump for President, Inc., 18-CV-2690

Dear Hon. Jesse Furman,

As additional legal authority in opposition to the defendant's motion to compel arbitration in my case (18-CV-2690), please review the attached August 7, 2018 order denying defendant's motion to compel arbitration in the related New York Supreme Court case (101616-17).

Respectfully,

Jessica Denson

Pro se

(310) 927-2300

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT: **HON. ARLENE P. BLUTH**
_____ Justice

PART 32

Index Number : 101616/2017
DENSON, JESSICA
vs
TRUMP, DONALD J. FOR
Sequence Number : 001
COMPEL

INDEX NO. _____
MOTION DATE _____
MOTION SEQ. NO. _____

The following papers, numbered 1 to _3_, were read on this motion to/for _Compel arbitration_

Notice of Motion/Order to Show Cause — Affidavits — Exhibits _____ | No(s). _1_
Answering Affidavits — Exhibits _____ | No(s). _2_
Replying Affidavits _____ | No(s). _3_

Upon the foregoing papers, it is ordered that this motion is _and cross-motion are decided in accordance with the accompanying memorandum decision and order._

Dated: _8/7/18_

_____
HON. ARLENE P. BLUTH, J.S.C.

1. CHECK ONE: ............................................. ☐ CASE DISPOSED  ☒ NON-FINAL DISPOSITION
2. CHECK AS APPROPRIATE: ...................MOTION IS: ☐ GRANTED ☐ DENIED ☐ GRANTED IN PART ☒ OTHER
3. CHECK IF APPROPRIATE: ........................... ☐ SETTLE ORDER     ☐ SUBMIT ORDER
                                                     ☐ DO NOT POST  ☐ FIDUCIARY APPOINTMENT  ☐ REFERENCE

MOTION/CASE IS RESPECTFULLY REFERRED TO JUSTICE FOR THE FOLLOWING REASON(S):

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: PART 32
-------------------------------------------------------------------X

JESSICA DENSON

                Plaintiff,

-against-

DONALD J. TRUMP FOR PRESIDENT, INC.,

                Defendant.
-------------------------------------------------------------------X

Index No. 101616/2017
Motion Seq: 001

DECISION & ORDER

HON. ARLENE P. BLUTH

The motion by defendant to compel arbitration is denied. The cross-motion by plaintiff, who is self-represented, to amend her complaint is granted.

**Background**

This action arises out of plaintiff's employment with defendant during the 2016 presidential election. Plaintiff was hired by defendant in August 2016 as a national phone bank administrator. She claims she was routinely overworked by her initial supervisor Camilo Jaime Sandoval– this included working seven days per week and ten hours per day. As the election approached, plaintiff was eventually assigned to work on the campaign's Hispanic outreach efforts. Plaintiff contends that Sandoval did not like this promotion and subjected plaintiff to a hostile tirade.

Plaintiff alleges that she worked in a horrible work environment from late September 2016 through the election. Plaintiff makes numerous allegations about this time period and

Page 1 of 6

accuses Sandoval and other supervisors of tracking plaintiff's whereabouts, trying to "find dirt on her," cyberbullying and harassment.

Defendant moves to compel arbitration and argues that plaintiff signed an employment agreement in which she expressly agreed to arbitrate any disputes arising out of or relating to her employment. Defendant argues that because all of plaintiff's allegations relate to her employment, they should be subject to arbitration. In opposition, plaintiff claims that defendant relies on an arbitration provision in a non-disclosure agreement, not an employment agreement. In reply, defendant acknowledges that plaintiff's New York City Human Rights Law ("NYCHRL") claims are not subject to arbitration and that defendant intends to respond to those claims when a responsive pleading is due.

**Discussion**

"It is a well settled principle of law in this state that a party cannot be compelled to submit to arbitration unless the agreement to arbitrate 'expressly and unequivocally encompasses the subject matter of the particular dispute. Where . . . there is no agreement to arbitrate 'all disputes' arising out of the parties' relationship but, rather, a limited arbitration clause relating to a specific type of dispute, the clause must be read conservatively if it is subject to more than one interpretation" (*Trump v Refco Properties, Inc.*, 194 AD2d 70, 74, 605 NYS2d 248 [1st Dept 1993]).

Here, the arbitration clause states that:

"Without limiting the Company's or any other Trump Person's right to commence a lawsuit in a court of competent jurisdiction in the State of New York, any dispute arising under or relating to this agreement may, at the sole discretion of each Trump

Person, be submitted to binding arbitration in the State of New York pursuant to the rules for commercial arbitrations of the American Arbitration Association, and you hereby agree to and will not contest such submissions. Judgment upon the award rendered by an arbitrator may be entered in any court having jurisdiction" (plaintiff's cross-motion, exh A, ¶ 8b).

As an initial matter, the Court observes that the arbitration clause confines arbitration to "any dispute arising under or relating to this agreement." *It does not* require arbitration for any "dispute between the parties" or even "any dispute arising out of plaintiff's employment." And the agreement itself only includes a specific list of five prohibited acts on plaintiff's part: no disclosure of confidential information, no disparagement, no competitive services, no competitive solicitation and no competitive intellectual property claims (*id.* ¶¶ 1-5). Moreover, the agreement is simply titled "Agreement" – not "Employment Agreement"– and it contains nothing about plaintiff's job responsibilities, terms of her employment, salary, benefits, or her ability to pursue her own claims.

The Court reads the arbitration clause to allow this defendant or a Trump Person[1] to decide whether to commence a lawsuit or an arbitration if plaintiff violated a term of the agreement. There is simply no way to construe this arbitration clause in this agreement to prevent plaintiff from pursuing harassment claims in court. The arbitration clause could have been written to require any disputes arising out of plaintiff's employment to go to arbitration or that any claims brought by plaintiff against defendant must be sent to arbitration. But it did not. Instead, the clause is much narrower: it allows defendant to choose whether to arbitrate any dispute that arises out of the agreement: that is, the list of plaintiff's five prohibited actions. The

---

[1] "'Trump Person' means each of Mr. Trump, each Family Member, each Trump Company (including but not limited to the Company) and each Family Member Company" (*id.* ¶ 6g).

clause cannot be interpreted to apply to plaintiff's *affirmative* claims arising out of her employment.

Put simply, the subject agreement was limited to plaintiff's conduct with respect to five specific categories and defendant had the option of court or arbitration if it claimed plaintiff violated its terms. In this case, no one claims that plaintiff violated the terms that governed plaintiff's conduct in those five categories; this case is about defendant's conduct in the employment context. Therefore, neither the agreement nor its arbitration provision has any application here.

While the Court recognizes that the rules of the American Arbitration Association ("AAA") provide that the arbitrator shall decide questions of arbitrability (*see* Rule 7), the circumstances of this case do not require this Court to send this matter to an arbitrator. It isn't even a close question. This narrow arbitration clause, which only applies to the narrow agreement, simply does not cover the claims asserted in this case. Defendant's behavior, which is the subject of this litigation, is not subject to arbitration; only plaintiff's behavior as it relates to those five categories can be arbitrated.

"[A]bsent clear and unmistakable evidence that the parties entered into an agreement that the arbitrators would decide the arbitrability of their claims, it is a question for the courts" (*Smith Barney, Inc. v Hause*, 238 AD2d 104, 105-106, 655 NYS2d 489 [1st Dept 1997] [internal quotations and citations omitted]). Although the invocation of the AAA rules would ordinarily require the arbitrator to decide arbitrability (*see e.g., 21st Century N. America Ins. Co. v Douglas*, 105 AD3d 463, 963 NYS2d 170 [1st Dept 2013] [holding that incorporating AAA rules requires an arbitrator to decide questions of arbitrability]), the fact is that the Court cannot find clear and

unmistakable evidence that the parties agreed to have an arbitrator decide arbitrability for all disputes between them. Indeed, they only agreed that defendant could choose to arbitrate if it claimed plaintiff's conduct violated the agreement in those five categories.

Otherwise, the existence of an arbitration clause between two parties which invokes the AAA rules, regardless of an agreement's limited scope or applicability, would require an arbitrator to decide arbitrability. It would create clearly unintended situations. For instance, if a residential lease contains an arbitration provision with respect to the applicable rent on a renewal term and the lease invokes the AAA rules, then would an arbitrator have to decide questions of arbitrability if the tenant fell on the sidewalk because it was improperly maintained? Of course not. In certain situations, it is clear that the limited agreement is not applicable to the current dispute. And this is one of those times. Here, the issue is defendant's conduct. With the instant agreement, which governs five specific aspects of *plaintiff's* conduct, the Court would be abdicating its responsibility if it deferred the question of arbitrability of *defendant's* conduct to an arbitrator.

## Summary

This Court's decision takes no position on the enforceability of any provisions of the agreement. Instead, this Court finds that the agreement was for a specific purpose– to prohibit plaintiff from doing certain things– and the arbitration clause states it only applies to that agreement. It does not apply to plaintiff's employment generally or to her ability to pursue the claims alleged in this lawsuit. To embrace that broad reading would be in contravention of the text of the agreement. Quite simply, the agreement only regulates plaintiff's behavior; it does not

Page 5 of 6

address defendant's behavior. Therefore, it is not applicable to plaintiff's current claims.

Plaintiff's cross-motion to amend is granted.

Accordingly, it is hereby

ORDERED that defendant's motion is denied; and it is further

ORDERED that plaintiff's cross-motion for leave to amend the complaint is granted, and the amended complaint in the proposed form annexed to the cross-motion shall be deemed served upon service of a copy of this order with notice of entry thereof; and it is further

ORDERED that defendant shall serve an answer to the amended complaint or otherwise respond within 20 days from the date of said service; and it is further

ORDERED that the parties are directed to appear for a preliminary conference in Room 432 at 60 Centre Street on October 4, 2018 at 2:15 p.m.

Dated: August 7, 2018
New York, New York

_____
**ARLENE P. BLUTH, JSC**

HON. ARLENE P. BLUTH