UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X

JESSICA M. DENSON,

                        Plaintiff,                        18-CV-2690 (JMF)

     -v-                                         MOTION TO VACATE
                                                        JUDGMENT
DONALD J. TRUMP FOR PRESIDENT, INC.,

                        Defendant.

----------------------------------------X


## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFF'S MOTION TO VACATE JUDGMENT

      Plaintiff Jessica Denson, respectfully and in good faith, herein seeks relief under Rule 60 (b) of the Federal Rules of Civil Procedure from the judgment entered on August 31, 2018. Due to fraud and misrepresentation by the Defendant, newly discovered evidence, Plaintiff's own inadvertence as a pro se litigant, and other reasons that justify relief, Plaintiff moves the Court to vacate the judgment dismissing Plaintiff's action and granting Defendant's motion to compel arbitration.

## ARGUMENT

      Foremost, the Defendant in their motion to compel arbitration and dismiss Plaintiff's claim misrepresented in the sworn affidavit of Michael Glassner, under penalty of perjury, that the agreement "attached as Exhibit A is a *true and correct* copy of the agreement executed by Plaintiff Jessica Denson in connection with her employment with the campaign" (emphasis added). That is false. This copy was fraudulently signed by Human Resources Director Lucia Castellano at some time at least one year and four months after Plaintiff executed her signature

on August 18, 2016, well beyond her term of employment that was terminated on November 18, 2016, and not before the *first and only true copy* of the agreement - *still unexecuted by any member of the campaign* - was provided to Plaintiff by Defendant in connection with the action against her commenced on December 21, 2017, as evidenced in Exhibits A and C of Plaintiff's initial complaint before this Court. At no point during her employment did Defendant execute the agreement or provide Plaintiff with a copy or intent thereof. Defendant elected to fraudulently endorse the agreement only as it attempted to wield and weaponize the agreement in current legal disputes, manifesting this false copy first in state court proceedings in March of 2018, and on June 4, 2018 in the affidavit referenced above.

While this distinction between the true and false copies of the agreement was visible to the Court in the pleadings, due to Plaintiff's limited legal resources as a lay person and pro se litigant, she excusably neglected to underscore their significance and relevance to the Court's ruling. Inter alia, the Defendant argued that because an arbitration clause is part of an agreement that exists between the parties, the Plaintiff should be compelled to arbitrate her claim, and the Court agreed. <u>The agreement, however, does not exist</u>. The Defendant never agreed to fulfill its obligations by executing the agreement containing the arbitration clause or by good faith actions demonstrating its intent to be bound.

The agreement in question is largely one-sided, charging the Plaintiff with overly broad and illegal obligations, namely the focus of her complaint. But it is not entirely one-sided; it charges the Defendant with obligations to which it never agreed.

First, section 8, paragraph c of the agreement states:

"<u>Prevailing Party Fees</u>. Any court judgment or arbitration award shall include an award of reasonable legal fees and costs to the prevailing party."

Herein, both parties are to be charged with payment of attorneys' fees, yet Defendant did not execute the agreement, failing to consent to these obligations.

Second, both parties are explicitly informed as to the method and demonstration of execution, and charged with "delivery" of that execution. Section 9 of the agreement, "Miscellaneous":

"**Counterparts.** This agreement may be executed in any number of counterparts, all of which taken together will constitute one and the same instrument. *Delivery of an executed signature page of this [] agreement* by facsimile transmission or .pdf, .jpeg, .TIFF, or other electronic format or electronic mail attachment *will be effective as delivery of an original executed counterparty hereof*" (emphasis added).

There are dedicated lines on the signature page for both parties to endorse the agreement, including specifically the name of the Plaintiff and the name and title of Human Resources Director Lucia Castellano, a clear indication that execution refers not only to Plaintiff's signature but also to Defendant's. In this section on "counterparts," Defendant is not only charged with a "delivery" obligation that it failed to execute, but it states explicitly that such "delivery of an executed signature page" is evidence of execution. Whereas delivery would be "effective" to demonstrate execution (i.e. agreement, consent and intent), failure to deliver would necessarily be *ineffective.* Again, the Plaintiff *at no time during her employment* or in *any format* received a counterpart of the agreement executed by the campaign.

***Because of the absence of an agreement between the parties alone, there is reason to justify the Court relieving the Plaintiff of a judgment compelling arbitration under that agreement. There was and is no agreement to arbitrate.***

---

Even if an agreement between the parties did exist, which it does not, substantial additional reasons exists for the court to vacate the judgement, which Plaintiff will include.

As stated, the Plaintiff, proceeding pro se, inadvertently omitted certain necessary legal challenges, both to the enforceability of the agreement, and in opposition to Defendant's motion. First, Plaintiff will address omissions in her initial claim. While entirely accurate, the claims that the agreement is "void because it violates public policy" and "overly broad," does not fully convey the albatross of illegality contained in the agreement. It also may inadvertently convey a challenge only to the substantive unconscionability of the agreement, while the agreement is both procedurally and substantively unconscionable. Those challenges to the agreement,

inadvertently omitted, include the following:

1. "<u>No Disparagement.</u>  During the term of your service *and at all times thereafter* you hereby promise and agree not to demean or disparage publicly the Company, Mr. Trump, and Trump Company, any Family Member, or any Family Member Company or any asset any of the foregoing own, or product or service any of the foregoing offer, in each case by or in any of the Restricted Means and Contexts and to prevent your employees from doing so" (Section 2, emphasis added)

Plaintiff understands that an individual may forfeit certain First Amendment rights to a private party by consent, but a government entity cannot dispossess a private citizen of those rights.  While the Campaign was and is a private entity, Mr. Trump and numerous members of his family and companies, pursuant to his inauguration as President of the United States and their inclusion in his administration, are no longer private individuals.

The agreement then, unless voided and deemed unenforceable, enables the Campaign to effectively act on behalf of the U.S. government to shield a sitting President and his administration from criticism, and infringe on the free speech rights of American citizens who at one time worked on behalf of the Campaign.  Indeed, the non-disparagement requirement would be reasonable, legal and enforceable if it expired at the conclusion of the campaign or once Mr. Trump were to assume the presidency, but it explicitly states that it continues "at all times thereafter" one's service to the campaign, which is again reinforced in the "Survival" clause ("This agreement will survive the expiration, cancellation or termination of any employment or independent contractor relationship that you may have with the Company or with any individual, entity, partnership, trust or organization that the Company has engaged") (paragraph 10).

This non-disparagement requirement is then a dangerous provision in violation of public policy.  It provides for a chilling effect on the free expression of political views, the ability of an individual who once worked on a particular campaign to change political persuasions and/or advocate for those views publicly, and otherwise live as a free and active American citizens, engaged in the political process.  Demanding public approbation or silence in regards to President Trump and his administration, as this

agreement does, while threatening legal and financial burden for failure to comply, is akin to oppressive governments that mandate public praise of their leaders and prosecute dissidents.

2. "No Disclosure of Confidential Information. During the term of your service and at all times thereafter you hereby agree promise and agree: […] d. not to save, store or memorialize any Confidential Information (including, without limitation, incorporating it into any storage device, server, Internet site or retrieval system, whether electronic, cloud based, mechanical or otherwise) except as may be expressly required in connection with the performances of services to the Company" (paragraph 1).

  Plaintiff inadvertently omitted a specific discussion of this provision's violation of public policy as it pertains to Plaintiff's right to bring a lawsuit for a discriminatory and hostile work environment. This provision in particular has a chilling and dangerous effect on the ability or freedom of an employee who is the victim of such an environment to record and preserve evidence thereof - evidence that Defendant would claim and has claimed, as shown in Exhibit C of Plaintiff's initial complaint, is "Confidential Information." This not only emboldens Defendant to harbor a hostile workplace, as it did, but sanctions it to illegally to prosecute Plaintiff, under auspices of the agreement, for legally presenting such evidence in a court of law. The state court, as shown to this Court, has since ordered that the court, not confidential arbitration proceedings, is the proper venue for all of Plaintiff's claims. This specific conflict regarding evidence - which in the Plaintiff's case includes not only serious civil violations, but also attempted criminal acts - underlies the larger degree to which enforcement of the agreement is at conflict with the law.

3. Procedural Unsconscionability. While the agreement is rife with substantive unconscionability, the Defendant's actions during and after Plaintiff's employment demonstrate without question that the agreement is also procedurally unconscionable.

  The agreement purports to be a confidentiality and non-disparagement agreement, protecting a particular company (in this case, the Campaign) from disclosure of information sensitive to that company or acts of ill-will against that company. This is how Plaintiff viewed this document when she signed it; not as an employment agreement

to govern acts of abuse or ill-will against her.  (The state court, as stated, has affirmed this view.)  The prospect that the agreement could be weaponized, as Defendant has, to cover a host of circumstances of which the Plaintiff had absolutely *no control,* and are in no way defined or discussed in the agreement, is an element of unfair surprise that renders it procedurally unsonscionable.  While the Plaintiff, with the aforementioned view of the agreement, signed it in good faith and good will, the Defendant in bad faith used it as an instrument to promote an oppressive and hostile workplace, where it could afterwards claim it had jurisdiction over those acts against Plaintiff and further victimize her in claiming to enforce its terms (again, all the while with the agreement not being in existence because of Defendant's failure to execute).

      Other elements of procedural unconscionability include the fact that Plaintiff was clearly disadvantaged in her ability to negotiate the agreement.  She was an individual untrained in the law, who, if she wished to have a job, was bound by adhesion to a pre-drafted contract with a sophisticated Defendant - one whose had no less that the immense legal and financial backing that comes with a United States general election presidential campaign.  Case law in this area supports that Plaintiff's lack of sophistication would preclude delegating issues of arbitrability to arbitration, and is reason that justifies relief from this Court's order to compel arbitration.

---

Plaintiff will now address the inadvertent omissions in her opposition to Defendant's motion to compel arbitration and dismiss her claim.  Defendant argued that Plaintiff's claim was a challenge to the agreement as a whole, and not specifically to the arbitration provision.  Plaintiff did not at the time challenge this interpretation with the more nuanced fact of the matter, however she excusably neglected to do.  While it is correct that Plaintiff seeks a declaratory judgment that the agreement *as a whole* is unenforceable, that necessarily includes a challenge to every provision of the agreement, *including, specifically, the arbitration clause*.  The above mentioned procedural unconscionability weighs heavily on the enforceability of any arbitration clause, and there is furthermore not "clear and unmistakeable evidence that the parties entered into an agreement that the arbitrators would decide the arbitrability of their claims," making it "a

question for the courts" (*Smith Barney, Inc. v House*, 238 AD2d 104, 105-106, 655 NYS2d 489 [1st Dept 1997]).

The Court, in its decision to compel arbitration, noted, "Here, of course, Denson does not bring "affirmative claims arising out of her employment. […] Instead, as noted, she raises a 'dispute that arises out of the agreement" (pg. 3, paragraph 1). What is imperative to consider, and an essential reason justifying relief, is that this parties have arrived at this point because in the first instance, Defendant improperly asserted the agreement as an employment agreement, and pursued an illegal prosecution of Plaintiff for filing employment claims. The dispute appears now to arise out of the agreement because of Defendant's bad faith and illegal weaponization thereof, but is not otherwise related to the agreement. The dispute actually arises out of a hostile workplace over which the agreement has no jurisdiction, even were it executed and in existence, which it is not.

There is also newly discovered evidence that justifies relief from the Court's judgment. Plaintiff is not at liberty to disclose this evidence, as it is confidential, but requests that the Court grant her permission to provide this evidence under seal.

As a final point of excusable neglect, the Plaintiff did and does oppose Defendant's motion to dismiss, as well the motion to compel arbitration. Plaintiff believed that stating opposition to Defendant's motion to compel arbitration would convey this fact, but excusably neglected to state her opposition to dismissal separately.

## CONCLUSION

Defendant has misrepresented to the Court the very existence of an agreement by fraudulently affixing a signature more than a year after the agreement would have been formed. The Court, in light of this misrepresentation and absence of formation of the contract in question, as well as inadvertently omitted questions of the agreement's substantive and procedural unconscionability,  in conjunction with the overall circuitous and weaponized use of the agreement by Defendant, should relieve Plaintiff of judgment dismissing her claim and

compelling arbitration pursuant to Rule 60 (b). Plaintiff respectfully and in good faith requests that the Court grant this motion.

Dated: September 28, 2018

By: /s/ Jessica Denson

Jessica Denson

*Pro se*

3925 Big Oak Drive, #4

Studio City, CA 91604

(310) 927-2300