**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JESSICA DENSON<br><br>                      Plaintiff,<br><br>     v.<br><br>DONALD J. TRUMP FOR PRESIDENT,<br>INC.<br><br>                   Defendant. | Civil Action No. 18-cv-2690 (JMF)<br><br><br>**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO CONFIRM ARBITRATION AWARDS AND IN SUPPORT OF CROSS-MOTION TO VACATE AWARDS** |

THE LAW OFFICE OF DAVID K. BOWLES, PLLC
David K. Bowles
14 Wall Street, 20th Floor
New York, New York 10005
Tel. (212) 390-8842
Fax (866) 844-8305
David@LawDKB.com

THE LAW OFFICE OF MAURY B. JOSEPHSON, P.C.
Maury B. Josephson
626 RXR Plaza
Uniondale, New York 11556
Tel. (516) 343-0090
Fax (516) 977-1315
Email: mbjlaw@verizon.net

*Attorneys for Plaintiff Jessica Denson*

## <u>**TABLE OF CONTENTS**</u>

I.      PRELIMINARY STATEMENT ................................................................ 1

II.     FACTS AND PROCEDURAL HISTORY ........................................... 4

III.    ARGUMENT ...................................................................................... 10

   a.      The Court Lacks Subject Matter Jurisdiction ............................ 10

   b.      The Court Should Abstain Due to Parallel State Court Litigation ........................ 12

       1.     The State Court Action Was Filed First ............................. 14

       2.     There Is No Res ............................................................. 15

       3.     The Convenience of The Forums Is Not A Factor ............. 15

       4.     State Law Provides the Rule of Decision ......................... 15

       5.     There Is A Danger of Piecemeal Litigation ..................... 15

       6.     The State Action Adequately Protects the Campaign's Rights ........................ 16

   c.      Confirmation Of The Awards Should Be Denied; Instead, They Both Should Be Vacated ............................................................................. 16

       1.     Arbitrator Kehoe's Awards Exceeded His Authority ........ 16

       2.     The Awards Violate Public Policy ................................... 18

IV.    CONCLUSION .................................................................................. 21

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Colorado Energy Mgt., LLC v. Lea Power Partners, LLC*, 114 AD3d 561, 564 (1st Dept 2014)...17

*Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976)...............2, 12, 15

*Cong. Talcott Corp. v. Roslin*, No. 95 CIV. 7698LAP, 1996 WL 499337, at *2 (S.D.N.Y. Sept. 4, 1996) ..................................................................................................................13

*Consolidated Edison v. Utility Workers' Union of Am.*, No. 95-cv-1672, 1996 U.S. Dist. LEXIS 9182, at *6 (S.D.N.Y. July 3, 1996) (also available on Westlaw at 1996 WL 374143)..............19

*Correspondent Servs. Corp. v. First Equities Corp. of Fla.*, 442 F.3d 767, 769 (2d Cir. 2006)11, 12

*D.A. Osguthorpe Family P'ship v. ASC Utah, Inc.*, 705 F.3d 1223, 1235 (10th Cir. 2013)............13

*Denson v. Donald J. Trump for President, Inc.*, Index No. 101616/17....................................passim

*Diapulse Corp. of America v. Carba, Ltd.*, 626 F.2d 1108, 1110 (2d Cir. 1980) ............................18

*Durant, Nichols, Houston, Hodgson & Cortese-Costa P.C. v. Dupont*, 565 F.3d 56, 63 (2d Cir. 2009).....................................................................................................................10, 12 n.3

*Fahnestock & Co. v. Waltman*, 935 F.2d 512, 515 (2d Cir. 1991)...................................................17

*First Keystone Consultants, Inc. v. Schlesinger Elec. Contractors, Inc.*, 862 F. Supp. 2d 170, 182 (E.D.N.Y. 2012)......................................................................................................................13

*Harry Hoffman Printing, Inc. v. Graphic Commc'ns Int'l Union, Local 261*, 912 F.2d 608, 611 (2d Cir. 1990) ...............................................................................................................................10

*Help Me See, Inc. v. Wonderwork, Inc. for Poor, Inc.*, 157 A.D.3d 455, 455 (1st Dep't 2018) ......14

*Melun v. Strange*, 898 F. Supp. 990, 992 (S.D.N.Y. 1990) .............................................................17

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 14 (1983) ...................... 12-13

*Perpetual Sec., Inc. v. Tang*, 290 F.3d 132, 136 (2d Cir. 2002).....................................................10

*United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 43 (1987) ......................................18

*Vaden v. Discover Bank*, 556 U.S. 49, 60 (2009) ....................................................................11, 12

*Vermont v. MPHJ Tech. Invs., LLC*, 803 F.3d 635 (1st Cir. 2015) .……………………….11 n.4

*W.R. Grace & Co. v. Local Union 759, Int'l Union of United Rubber Workers*, 461 U.S. 757, 766 (1983)...................................................................................................................................18

**Statutes**

28 U.S.C. §1332...............................................................................................................................11

28 U.S.C. §2201...........................................................................................................................1, 11

Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-3(a) .................................................19

Federal Arbitration Act, 9 U.S.C. §1, *et seq.* ...............................................................................1, 9

New York State Human Rights Law, Executive Law §296(7)..........................................................18

New York City Human Righst Law, NYC Admin. Code §8-107(7)..............................6, 15,19, 20

**Rules**

CPLR 7503 ……………………………………………………………………………………...5

CPLR 7510, 7511..................................................................................................................... 13-17

iii

I.      **PRELIMINARY STATEMENT**

Plaintiff Jessica Denson ("Ms. Denson" or "Plaintiff"), through the undersigned attorneys, respectfully submits this Memorandum of Law in opposition to the motion of Donald J. Trump for President, Inc. (the "Campaign" or "Defendant") to confirm arbitration awards entered in an arbitration proceeding before Arbitrator L. Paul Kehoe, appointed by the American Arbitration Association ("AAA"), titled *Donald J. Trump for President, Inc. v. Jessica Denson*, AAA Case No. 01-17-0007-6454 (the "Arbitration").  Ms. Denson also submits this Memorandum in support of her cross-motion to vacate the awards at issue – a point that the Court should only reach if it finds it has subject matter jurisdiction and declines to abstain from considering the Campaign's motion to confirm for the reasons set forth below.

Initially, Ms. Denson respectfully submits that this Court lacks subject matter jurisdiction over the motion to confirm, and this action overall.  Subject matter jurisdiction is lacking because neither the Federal Arbitration Act ("FAA"), 9 U.S.C. §1, *et seq.* nor the Declaratory Judgment Act ("DJA"), 28 U.S.C. §2201, provides an independent basis for federal jurisdiction, and the *pro se* complaint filed by Ms. Denson does not establish any other basis for federal question or diversity jurisdiction.

Further, to the extent the Court finds it has subject matter jurisdiction, Ms. Denson urges the Court to abstain from considering the Campaign's motion to confirm.  The Court should abstain in consideration of Ms. Denson's pre-existing motion to vacate the same awards, brought on December 4, 2018 by Order to Show Cause in the state court action titled *Denson v. Donald J. Trump for President, Inc.*, Index No. 101616/17 (Supreme Court, New York County, Justice Arlene Bluth presiding) (the "State Court Action").  At the time Ms. Denson moved to vacate in the State Court Action, this federal action had been dismissed and closed.  A hearing on her motion to vacate is scheduled for January 29, 2019.  Ms. Denson's State Court motion to vacate

raises the same issues that will be before this Court on the Campaign's motion to confirm and her cross-motion to vacate in the event the Court declines to abstain. All considerations pertinent to the *Colorado River* doctrine favor this Court's abstention.

On the merits – if the Court reaches them – the Campaign's motion to confirm should be denied and Ms. Denson's cross-motion to vacate should be granted. Ms. Denson does not deny nor does she seek to evade this Court's August 30, 2018 order (the "Federal Court Order") that she must arbitrate her claims of invalidity, on various legal theories, of the confidentiality and non-disparagement agreement ("NDA") she signed as a condition for becoming a Campaign worker. She is preparing to do so in a class arbitration she intends to file with the AAA. The fallacy inherent in the Trump Campaign's motion to confirm is that the Federal Court Order specifically directed her to raise invalidity of the NDA in the Arbitration being conducted by Arbitrator Kehoe. The Federal Court Order says nothing of the kind, it just says she must arbitrate.

Arbitrator Kehoe's awards should be denied confirmation, and should be vacated, for at least three reasons. First, the awards should be vacated because Arbitrator Kehoe exceeded his authority by continuing to arbitrate a dispute even after a court of competent jurisdiction, *i.e.* Justice Bluth, by her Order dated August 7, 2018 in the State Court Action, held the subject matter of Ms. Denson's state law claims, including sex discrimination and harassment, to be non-arbitrable under the NDA's terms. The Campaign's Demand for Arbitration leaves no doubt that it too arises from the same subject matter and is also non-arbitrable. The Demand alleges as the sole basis for liability that Ms. Denson "breached her obligations [pursuant to the NDA] by publishing certain confidential information and disparaging statements in connection with a lawsuit she filed against [the Campaign] in New York Supreme Court."

This Court has already held that there is no inconsistency between the Federal Court Order and Justice Bluth's decision and indeed there is none.  Application of Justice Bluth's order to hold the dispute raised by the Campaign in the Arbitration non-arbitrable under the terms of the NDA does not in any sense disturb the requirement of the Federal Court Order that Ms. Denson arbitrate her claim of the NDA's invalidity – at such time as she chooses to do so.  In contrast, Arbitrator Kehoe's continued arbitration of a dispute found by a court of competent jurisdiction to be non-arbitrable exceeded his authority, and the resulting awards should be vacated.

Second, the awards should be vacated because Ms. Denson did not at any time seek a decision on the NDA's validity from Arbitrator Kehoe.  Instead, the Arbitrator again exceeded his authority by raising the issue *sua sponte*.  On September 7, 2018, Ms. Denson submitted a letter to the AAA to inform Arbitrator Kehoe of Justice Bluth's non-arbitrability decision and provide him with a copy of it.  Arbitrator Kehoe's initial award transmogrified that simple transmittal into a challenge to the NDA's validity.  Then Arbitrator Kehoe chastised Ms. Denson for failing to submit any law or argument to support her claim of invalidity – hardly a surprise since she never submitted such a claim to him.  To top things off, based on the absence of such law or argument, and supplying no authority or justification of his own, Arbitrator Kehoe held the NDA to be valid and enforceable.  Arbitrator Kehoe did nothing less than invent a dispute not before him, then bent over backwards to decide the dispute in the Campaign's favor.  It is hard to imagine a clearer case of an arbitrator exceeding his authority.

Third, the awards should be vacated because they violate public policy.  Federal courts, including the Supreme Court and Second Circuit Court of Appeals, and New York state courts (the NDA provides for the application of New York law) all recognize, as an exception to the

high level of deference provided to arbitration awards generally, that an arbitration award that violates public policy must not be enforced.  In this case the Campaign's Demand for Arbitration makes clear that the Arbitration's sole purpose is to retaliate against and impose pecuniary liability on Ms. Denson for bringing a suit alleging sex discrimination and harassment – that by doing so, Ms. Denson violated the NDA by "publishing certain confidential information and disparaging statements."  Well accepted and deep-rooted public policy, reflected in multiple, explicit statutory provisions on the federal, state and local levels, prohibit such retaliation. Arbitrator Kehoe's awards, in contrast, specifically authorize and reward such unlawful retaliation and should be vacated as public policy violations.

## II.   FACTS AND PROCEDURAL HISTORY

The procedural history begins with the State Court Action.  Ms. Denson filed the State Court Action with a *pro se* complaint (the "Complaint").  Declaration of David K. Bowles ("Bowles Dec.") Exhibit ("Ex.") 1.[1]  The Complaint, arising largely under NYCHRL, alleges that officers of the Campaign discriminated against Ms. Denson based on sex and imposed a hostile work environment on her.  The Complaint also asserts common law claims, including defamation.

In response to the State Court Action, the Campaign filed a Demand for Arbitration with the AAA, contending that by filing a sex discrimination and harassment suit, Ms. Denson had disparaged the Campaign and disclosed its confidential information in violation of the NDA. Bowles Dec. Ex. 2.  Although the NDA provides for its governance by New York law, the Campaign failed to serve the Demand in the manner required by the New York Civil Practice

---

[1] Ms. Denson thereafter amended the Complaint.  The amendments are not relevant to the matters under consideration by the Court.

Law and Rules ("CPLR") 7503 – *i.e.* as if it were a summons.  Declaration of Jessica Denson ("Denson Dec.") at ¶ 4.

The Demand shows on its face that the State Court Action and the Arbitration arise from the same subject matter – her claims of sex discrimination and harassment, and her common law employment claims.  The Demand for Arbitration plainly states that the Campaign had sued Ms. Denson in arbitration for bringing the State Court Action:

> Respondent breached confidentiality and non-disparagement obligations contained in a written agreement she executed during her employment with claimant Donald J. Trump for President, Inc. She breached her obligations by publishing certain confidential information and disparaging statements *in connection with a lawsuit she filed against claimant in New York Supreme Court*. Claimant is seeking compensatory damages, punitive damages; and all legal fees and costs incurred in connection with this arbitration.

Bowles Dec. Ex. 2 at Exhibit A thereto (emphasis added).

On March 19, 2018, the Campaign filed a motion to compel arbitration and stay the State Court Action.  The Campaign filed this motion before Justice Bluth in the State Court Action. Bowles Dec. Ex. 3.  Ms. Denson opposed such motion *pro se*, but, as shown by the timeline below, the Campaign continued to pursue the arbitration despite the pending decision as to arbitrability before the State Court.

Ms. Denson also filed a *pro se* complaint in the instant action on March 26, 2018, seeking a declaratory judgment holding the NDA to be invalid and unenforceable.  Docket Entry ("DE") No. 1.  The NDA did not require Ms. Denson to pursue her invalidation claims in arbitration *ab initio*.  A copy of the NDA is provided at Bowles Dec. Ex. 4.[2]  Rather, Section 8(b) permits the

---

[2] Notably, the NDA provided to Ms. Denson (Bowles Aff. at Ex. 4) differs from the NDA provided by the Campaign (Declaration of Lawrence S. Rosen ("Rosen Aff.") at Ex. A) in one important respect: the NDA from the Campaign is executed by the Campaign.  Ms. Denson

Campaign to elect whether such a claim must be arbitrated.  The Campaign elected to require arbitration and, on June 4, 2018, moved to compel arbitration of Ms. Denson's invalidation claims and dismiss the instant action.  DE Nos. 8-13.

On August 9, 2018, Justice Bluth issued a decision and order in the State Court Action emphatically rejecting the Campaign's motion to compel arbitration of Ms. Denson's claims therein.  Bowles Dec. Ex. 5 (the "State Court Order").  The State Court Order noted that the NDA's arbitration clause at issue is narrow, permitting the Campaign to sue only over five specific kinds of conduct by Ms. Denson, and cannot preclude her claims of sex discrimination and harassment prohibited by NYCHRL and other common law claims relating to her employment from being pursued in court.  State Court Order at 2-3.[3]  As the state court noted, the arbitration clause "*does not* require arbitration for any 'dispute between the parties' or even 'any dispute arising out of plaintiff's employment.'"  *Id.* at 3.

Justice Bluth concluded, "[t]here is simply no way to construe this arbitration clause in this agreement to prevent plaintiff from pursing harassment claims in court . . . The clause cannot be interpreted to apply to plaintiff's *affirmative* claims arising out of her employment."  Decision at 3-4 (emphasis in original).  The state court further concluded that the arbitrator did not, in this matter, get to decide arbitrability, stating:

> It isn't even a close question.  The narrow arbitration clause, which only applies to the narrow agreement, simply does not cover the claims asserted in this case.  Defendant's behavior, which is the subject of this litigation, is not subject to arbitration; only

---

never received or saw a signed copy of the NDA before this series of lawsuits began.  Denson Dec. at ¶ 12.

[3] The "five prohibited acts" were "no disclosure of confidential information, no disparagement, no competitive services, no competitive solicitation and no competitive intellectual property claims."  *Id.* at 3.

> plaintiff's behavior as it relates to those five categories can be
> arbitrated.

State Court Order at 4.

The state court thereupon denied Campaign's motion to compel arbitration. Accordingly, Ms. Denson believed, reasonably enough, that her case – including any claim that she somehow did something wrong just by filing it – would continue in the state court.

Nevertheless, the Campaign continued the Arbitration without Ms. Denson's participation. It did so even though the Arbitration is part and parcel of the Action and its subject matter, since the Arbitration seeks to do nothing more than impose liability on Ms. Denson for raising the subject matter covered by the Action, including sex discrimination and harassment.

On August 30, 2018, this Court issued the Federal Court Order, holding that Ms. Denson must pursue her invalidation claims with respect to the NDA in arbitration and entering an order compelling arbitration and dismissing the instant action. This Court did not, however, compel or direct Ms. Denson to bring her invalidation claims within the confines of the Arbitration being conducted by Arbitrator Kehoe. To the contrary, the Court found no inconsistency between its direction that Ms. Denson pursue her invalidation claim in arbitration and Justice Bluth's finding that the subject matter of the State Court Action (and hence, the Arbitration) is non-arbitrable.

In the meantime, Ms. Denson – still *pro se* – continued to trust that she would not be compelled to arbitrate the subject matter of the State Court Action (including the Arbitration), and that the state court would allow her to continue in open court, a belief the State Court Order vindicated and with which the Federal Court Order did not interfere. Denson Dec. ¶¶ 4-8, 11. Accordingly, she – still acting *pro se* – continued to refuse to participate in the Arbitration. *Id.*

At the same time, remarkably, but not surprisingly, it appears that the Campaign did its best to keep Ms. Denson in the dark about its continuation of the Arbitration.  A document obtained from the Arbitration, dated August 20, 2018, indicates that Arbitrator Kehoe had "denied . . . an application by Claimant [the Campaign] that its written application for an award *not be provided to Respondent* [Ms. Denson]."  Bowles Dec. Ex. 6, first paragraph (emphasis added).  Notably, this August 20 order is *11 days after the State Court Order that the matters asserted by Ms. Denson were not arbitrable.  Id.*  At the same time, the Campaign did not await the Federal Court Order to proceed with the Arbitration, as it made its application for an award on July 23, 2018.  *Id.* (affidavit is support of application dated July 23, 2018).

Ms. Denson, becoming aware of the continuing arbitration, wrote the AAA on September 7, 2018, and forcefully objected, stating:

> Apparently, [the Campaign] has carried on a threatening and wasteful proceeding over the past several months, for which they claim I bear the cost and by which they have attempted to obtain judgement without my knowledge of the underlying application . . .. None of these proceedings . . . should have occurred.

Bowles Dec. Ex. 7.

The Arbitrator ignored Ms. Denson's objection and, on October 19, 2018, issued a partial award (the "Partial Award").  Bowles Dec. Ex. 8.  Rather than taking Ms. Denson's *pro se* letter as an invitation to caution, the Arbitrator used it as a pretext for subjecting her to an exceptional negative finding on an issue she did not raise in the Arbitration (and that the Campaign does not appear to have raised either): that the NDA is a valid and enforceable agreement.  To do this, Arbitrator Kehoe completely misread and misused Ms. Denson's September 7 letter, stating:

> Although it does not expressly do so, I will consider Respondent's letter of September 7, 2018 as raising the claim that she asserted in the Federal Action, *i.e.*, that the Agreement "is void and unenforceable."  . . . respondent has not submitted any law or argument that would support a finding by me that the

Agreement "is void an unenforceable."  I find that the Agreement is valid and
enforceable.

Partial Award at 3.

This is remarkably misleading, since Ms. Denson's September 7 letter offered no
argument about the NDA's validity or enforceability.  Arbitrator Kehoe even used that fact
against her by inventing the pretext that Ms. Denson had asserted the argument but then offered
no support for it.  Arbitrator Kehoe astonishingly used a straw-man tactic to maneuver a dispute
that Ms. Denson had not put before him (nor had, for that matter, the Campaign) in order to rule
against her.  Partial Award at 3.

On December 4, 2018, Ms. Denson moved by Order to Show Cause in the State Court
Proceeding to vacate the Partial Award and any subsequent award that might be issued in the
Arbitration.  A copy of the Order to Show Cause, as signed by Justice Bluth, is provided at
Bowles Dec. Ex. 9.  On December 11, 2018, Arbitrator Kehoe issued a Final Award in the
Arbitration.  Bowles Dec., Ex. 10.  On December 12, 2018, counsel for Ms. Denson notified the
state court of the Final Award and requested that it be vacated along with the Partial Award in
accordance with the Order to Show Cause and for the reasons submitted by Ms. Denson in
support of the Order to Show Cause.  Bowles Dec., Ex. 11.  On December 21, 2018, the
Campaign filed the instant motion, before this Court, to confirm the Partial and Final Awards
issued in the Arbitration.

For the reasons set forth in this Memorandum, and in the accompanying declarations and
exhibits, this Court should deny the Campaign's motion and dismiss the action on the ground
that it lacks subject matter jurisdiction or, to the extent the Court finds it has jurisdiction, it
should abstain from considering the motion since the same issues are already under consideration
in previously filed, parallel state court proceedings.  In the event the Court declines to abstain

9

and reaches the merits, it should deny the motion to confirm and grant Ms. Denson's cross

motion to vacate Arbitrator Kehoe's awards.

### III.   **ARGUMENT**

a.   The Court Lacks Subject Matter Jurisdiction

The Court lacks subject matter jurisdiction over this matter, because the Federal

Arbitration Act ("FAA"), 9 U.S.C. §1, *et seq.* does not independently confer jurisdiction, and

there is no federal question or diversity jurisdiction here.  The Court should therefore deny the

Campaign's motion and dismiss this action.

The Second Circuit has determined that the FAA does not independently confer

jurisdiction on the federal courts:

> [W]e have consistently held that Congress did not intend the [FAA] as a grant of
> jurisdiction. There must be an independent basis of jurisdiction before a district
> court may entertain petitions under the Act.

*Harry Hoffman Printing, Inc. v. Graphic Commc'ns Int'l Union, Local 261*, 912 F.2d 608, 611

(2$^d$ Cir. 1990) (denying jurisdiction under FAA but sustaining jurisdiction under another statute

not relevant here).  In *Durant, Nichols, Houston, Hodgson & Cortese-Costa P.C. v. Dupont*, 565

F.3d 56, 63 (2$^d$  Cir. 2009), for example, following *Harry Hoffman Printing*, the Second Circuit

noted that the district court had erred in assuming federal question jurisdiction for a judgment

affirming an arbitration award, confirming that the FAA does not confer jurisdiction, and "it

must be determined whether at the time the present action was commenced there was diversity

jurisdiction . . . and whether the amount in controversy" exceeded $75,000.  In *Perpetual Sec.,*

*Inc. v. Tang*, 290 F.3d 132, 136 (2$^d$ Cir. 2002), the Second Circuit examined a case where a party

had moved to vacate an arbitration award and confirmed that there was no federal jurisdiction to

do so, absent either diversity and amount in controversy or a federal question.  The court noted

that "although the parties appear to be diverse, the amount in controversy is less than the

statutorily required $75,000" and, finding no federal question, instructed the district court to dismiss the case for lack of subject matter jurisdiction.  *Id.*

Further, the federal Declaratory Judgment Act ("DJA"), 28 U.S.C. §2201 does not provide an independent basis for jurisdiction.  In *Correspondent Servs. Corp. v. First Equities Corp. of Fla.*, 442 F.3d 767, 769 (2ᵈ Cir. 2006), the plaintiff "sought declaration of no liability" in federal court.  The court noted that the DJA "does not by itself confer subject matter jurisdiction on the federal courts . . .. The asserted basis for jurisdiction in this case is 28 U.S.C. §1332, requiring that the parties be diverse and that the amount in controversy exceed $75,000." *Id.*  Moreover, a counterclaim does not impart federal jurisdiction where it is originally lacking. *Vaden v. Discover Bank*, 556 U.S. 49, 60 (2009) (in evaluating subject matter jurisdiction in a FAA motion to compel arbitration, ruling "[n]or can federal jurisdiction rest upon an actual or anticipated counterclaim").[4]

Thus, in the case now before the Court, there must be an independent basis for jurisdiction.  There is none.  There is no federal question alleged, and there is no amount in controversy that would satisfy diversity jurisdiction.

In the Court's August 30, 2018 Order in this matter (DE No. 23), the Court dismissed the original case.  DE No. 23 at 4 ("Accordingly, the case is dismissed").  The Campaign's motion to confirm the arbitration award should therefore be considered a new action.  It is clear, if this is a

---

[4] Notably, the Supreme Court's decision in *Vaden* was superseded by statutory amendments specifically to allow federal jurisdiction "over claims arising under the patent laws *even* when asserted in counterclaims, rather than in an original complaint."  *Vermont v. MPHJ Tech. Invs., LLC*, 803 F.3d 635, 644 (1ˢᵗ Cir. 2015).  The fact that Congress limited the expansion of federal jurisdiction over matters asserted in counterclaims to patent cases reaffirms the principal that federal jurisdiction may not be imparted by counterclaims generally.

new action, the amount in controversy is not met.  *See* Notice of Motion (DE No. 29), requesting

a judgment in favor of the Campaign in the amount of $49,507.64.

If the Court were to decide that the Campaign's application is indeed a continuation of

the earlier case, then it is nonetheless clear that there is no diversity jurisdiction, because, once

again, there is no amount in controversy.  The original complaint did state that there was

"diversity of citizenship," which appears to be true.  DE No. 2 at Section I.  However, it said

nothing about the amount in controversy, and the relief sought was "declaratory relief that the

NDA is void and unenforceable."  DE No. 2 at Section IV.  Ms. Denson's original complaint,

therefore, was a zero-value complaint, and the Court did not and would not have diversity

jurisdiction over this matter – including the current motion.[5]  *Correspondent Servs. Corp.*, 442

F.3d at 769.  No counterclaim by the Campaign can constitute the basis for diversity jurisdiction.

*Vaden*, 556 U.S. at 60.

    b.    <u>The Court Should Abstain Due to Parallel State Court Litigation</u>

Even if the Court were to determine it has subject matter jurisdiction, it should abstain

from deciding this matter because of the parallel State Court Action.  As stated above, that

proceeding is parallel, deals primarily with issues of state law, was started first, is more

advanced, and for these and other reasons, the Court should abstain under the *Colorado River*

doctrine.

In the declaratory judgment case of *Colorado River Water Conservation Dist. v. United*

*States*, 424 U.S. 800 (1976) the Supreme Court recognized that federal courts should abstain

---

[5] Ms. Denson was acting *pro se* at the time of the original complaint, and apparently the
Campaign, represented by counsel, did not raise the issue of subject matter jurisdiction to the
Court's attention.  Nonetheless, as the Second Circuit has ruled, "[n]otwithstanding any prior
proceedings, it is our obligation to raise the matter of subject matter jurisdiction "*whenever* it
appears from the pleadings or otherwise that jurisdiction is lacking."  *Durant, Nichols, Houston,*
*Hodgson & Cortese-Costa P.C. v. Dupont*, 565 F.3d 56, 63 (2$^{\text{d}}$ Cir. 2009) (emphasis in original).

from exercising their jurisdiction where, *inter alia*, "there have been presented difficult questions of state law bearing on policy problems of substantial public import."  In the later case of *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 14 (1983), the Court applied that doctrine to the FAA, in a manner relevant here.  Courts have also suggested that in applying this analysis, a court may consider the "possibly 'vexatious or reactive nature of either the federal or the state litigation.'"  *D.A. Osguthorpe Family P'ship v. ASC Utah, Inc.*, 705 F.3d 1223, 1235 (10th Cir. 2013) (ruling abstention is proper under *Colorado River* from decision on motion to compel arbitration).

Courts in the Second Circuit have refined the abstention analysis to six primary factors: "(1) the order in which the actions were filed; (2) whether either court has established jurisdiction over a *res* in the action; (3) the relative inconvenience of the federal forum; (4) whether federal or state law provides the rule of decision; (5) the desirability of avoiding piecemeal litigation; and (6) whether the state action adequately protects the federal plaintiff's rights."  *Cong. Talcott Corp. v. Roslin*, No. 95 CIV. 7698 (LAP), 1996 WL 499337, at *2 (S.D.N.Y. Sept. 4, 1996) (ruling abstention appropriate).  Here, those six factors argue for abstention.  An additional threshold question is whether the proceedings are "parallel."  "Lawsuits are considered 'parallel' if 'substantially the same parties are contemporaneously litigating substantially the same issue' in both forums."  *First Keystone Consultants, Inc. v. Schlesinger Elec. Contractors, Inc.*, 862 F. Supp. 2d 170, 182 (E.D.N.Y. 2012) (abstention warranted).  As shown below, the threshold question and the six factors warrant abstention here.

As to the threshold question, there is no doubt that the state and federal matters are "parallel."  The parties are the same: Jessica Denson (Plaintiff) and Donald J. Trump for President, Inc. (Defendant).  As stated above, on December 4, 2018, Ms. Denson brought a

motion before the state court to vacate pursuant to New York Civil Practice Law and Rules
("CPLR") 7511.  Bowles Dec. Ex. 9.   Ms. Denson's grounds were, *inter alia*, that the arbitrator
issued the awards despite that State Court's decision that the matter was not arbitrable, that the
arbitrator exceeded his authority by ruling on the validity of the NDA, despite the fact that that
issue was never before him, and – most importantly here – that the award violates public policy
because it is illegal retaliation for Ms. Denson's filing of claims of sex discrimination and
harassment.  *Id.* at ¶ 10.

The usual practice in these matters is for there to be a motion to vacate and a cross-
motion to confirm, or vice-versa.  *See, e.g.*, *Help Me See, Inc. v. Wonderwork, Inc. for Poor,
Inc.*, 157 A.D.3d 455, 455 (1ˢᵗ Dep't 2018).  The Campaign could easily have cross-moved to
confirm the award under CPLR 7510 but chose not to do so.  Instead, the Campaign has made
what is effectively a cross-motion before this Court, presumably engaging in forum shopping,
and compelling Ms. Denson to bring the current cross-motion to vacate.  Under these
circumstances the Court should abstain.

### 1.   The State Court Action Was Filed First

The State Court Action was filed first, and therefore this factor favors abstention.  Ms.
Denson filed the State Court complaint on November 14, 2017.  Bowles Dec., Ex. 1.  Ms.
Denson filed her motion to vacate on December 4, 2018.  *Id.* Ex. 9.  Oral argument is scheduled
to be held on that motion on January 29, 2019.  *Id.*  Accordingly, the State Case is well advanced
on this issue.

Defendant filed the current motion before this Court on December 21, 2018.  DE No. 29.
As Ms. Denson has argued, this is effectively a new case, since the confirmation of *these
arbitration awards* has little or nothing to do with the Court's earlier order.  Even if the Court
were to consider Ms. Denson's original complaint in this matter to be the filing date, that was on

March 26, 2018 (DE No. 2), and therefore was still filed after the State Court Action was filed.

Accordingly, this factor weighs in favor of abstention.

### 2.   There Is No *Res*

This factor is neutral, as neither court has assumed control over any property in this

matter.

### 3.   The Convenience of The Forums Is Not A Factor

This factor is neutral, as the courts at issue here are equally convenient.

### 4.   State Law Provides the Rule of Decision

State law is at issue here, and this factor weighs heavily in favor of abstention.  As stated

above, a critical issue to be determined here is whether the awards – and indeed the whole

Arbitration – was retaliatory to Ms. Denson's filing of a sex discrimination and harassment

lawsuit.  Given that the Arbitration Demand clearly states "[s]he breached her obligations . . . in

connection with a lawsuit she filed against claimant in New York Supreme Court," Bowles Dec.

Ex. 2, Ms. Denson contends that the arbitration cannot be anything other than retaliatory, and

therefore in violation of both public policy and New York law.  Although, as discussed below,

federal, state and local law and public policy are in strong accord on the subject, since the State

Court Action arises under NYCHRL, this is clearly a matter of state law and state public policy

and should be decided by the state court.  This factor weighs heavily in favor of abstention.

### 5.   There Is A Danger of Piecemeal Litigation

The danger of piecemeal litigation is clear and argues for abstention.  Ms. Denson has

moved to vacate the arbitration award in the State Court Action, the Campaign has moved to

confirm the award in this Court, and Ms. Denson now cross-moves, as she must, to vacate the

award here as well.  There is always a danger that the two courts, relying on the same facts, reach

different answers.  As *Colorado River* teaches, this is to be avoided if possible.

6.    The State Action Adequately Protects the Campaign's Rights

Finally, the state court can adequately protect the Campaign's rights under state law.

CPLR 7510 clearly allows (and in fact compels) New York courts to confirm arbitration awards

if they are not vacated; New York courts are also no strangers to application of the FAA.  If the

state court determines that the awards are proper, there is no doubt that the state court can

confirm them.  Accordingly, this factor weighs in favor of abstention.

Evaluating all the factors above, this case clearly calls for abstention, even if the Court

ultimately determines that it has jurisdiction.  Accordingly, Ms. Denson respectfully requests that

the Court deny the motion and dismiss the case.

c.    Confirmation Of The Awards Should Be Denied; Instead, They Both Should Be Vacated

1.    Arbitrator Kehoe's Awards Exceeded His Authority

Section 10 of the FAA (9 U.S.C. §10) and CPLR 7511(b)(2) each provide for *vacatur* of

an arbitration award issued by an arbitrator in excess of his authority.  In the case of the awards

at issue here, Arbitrator Kehoe exceeded his authority in two critical respects and, as a result, his

awards should be vacated.

First, the awards exceeded Arbitrator Kehoe's authority because he continued arbitrating

a dispute that a court of competent jurisdiction, *i.e.* Justice Bluth in the State Court Action, found

non-arbitrable in the State Court Order.  Indeed, she made that finding resoundingly,

commenting that "it isn't even a close question."  State Court Order at 4.  The Campaign is thus

left with the fallacy that this Court, in finding in the Federal Court Order that Ms. Denson must

arbitrate any claim as to the NDA's invalidity, specifically compelled or authorized Arbitrator

Kehoe to decide that question in the Arbitration.  However, the Campaign's fallacy sets up a

conflict between the State Court Order and the Federal Court Order, whereas the Federal Court

Order harmonized the two, recognizing that there is no conflict between finding the issues raised in the Arbitration – which did not include Ms. Denson's invalidity claim – are non-arbitrable, while finding her invalidity claim to be arbitrable.  As noted above, Ms. Denson plans to pursue the arbitration of her invalidity claim, as directed by the Federal Court Order, by commencing a class arbitration before the AAA.  Denson Dec. ¶ 11.

Second., Arbitrator Kehoe exceeded his authority in ruling on the NDA's validity even though neither Ms. Denson nor the Campaign placed that issue before him.  "If arbitrators rule on issues not presented to them by the parties, they have exceeded their authority and the award must be vacated."  *Fahnestock & Co. v. Waltman*, 935 F.2d 512, 515 (2[d] Cir. 1991); *see also Melun v. Strange*, 898 F. Supp. 990, 992 (S.D.N.Y. 1990) ("courts will vacate an award where the arbitrator has ruled on issues not presented to him by the parties") (collecting cases); *Colorado Energy Mgt., LLC v. Lea Power Partners, LLC*, 114 A.D.3d 561, 564 (1st Dept 2014) (same); CPLR 7511(b)(1)(iii).

In rendering the Partial Award, Arbitrator Kehoe went to unexplainable lengths to rule against Ms. Denson, a non-participating *pro se* litigant, on issues not before him in the Arbitration.  Chief among these is his use of Ms. Denson's September 7, 2018 letter as a basis for indicating that Ms. Denson had raised the validity and enforceability of the NDA in the Arbitration, then going on to rule "the [NDA] is valid and enforceable" because "[Ms. Denson] has not submitted any law or argument" in support of such a finding.  Partial Award at 3.

The Arbitrator's thought process rejects reality: the letter does not submit law or argument because Ms. Denson was not participating in the Arbitration and was writing to inform the tribunal of the State Court Order finding the subject matter of the Arbitration non-arbitrable. The letter does not by its words, and Ms. Denson did not by her words, intend to place the issue

17

of the validity or enforceability of the NDA before Mr. Kehoe for decision.  At minimum, if that

is what Arbitrator Kehoe believed Ms. Denson's letter had done, an invitation to the parties to

brief this important issue should have ensued before issuing the Partial Award, which itself

validates the NDA in cursory fashion, without any authority or analysis.[6]  Instead, Arbitrator

Kehoe threw caution to the wind and seemingly bent over backwards to rule in the Campaign's

favor.  His awards should therefore be vacated.

2.      The Awards Violate Public Policy

The United States Supreme Court and Second Circuit Court of Appeals have long held

that a court may not enforce, and must vacate, an arbitral award that violates public policy.  *W.R.*

*Grace & Co. v. Local Union 759, Int'l Union of United Rubber Workers*, 461 U.S. 757, 766

(1983); *Local 97, IBEW v. Mohawk Power Corp.,* 196 F.3d 117, 125 (2d Cir. 1999) (citing *W.R.*

*Grace* and stating "[a] court may vacate an arbitral award on public policy grounds"); *Diapulse*

*Corp. of America v. Carba, Ltd.*, 626 F.2d 1108, 1110 (2ᵈ Cir. 1980) ("[a]lthough contravention

of public policy is not one of the specific grounds for vacation set forth in section 10 of the

Federal Arbitration Act, an award may be set aside if it compels the violation of law or is

contrary to a well accepted and deep rooted public policy").  Determination of whether an award

violates public policy is a matter only for the courts to decide, not the arbitrator.  *W.R. Grace*,

461 U.S. at 766.

Public policy for these purposes is defined as "some explicit public policy that is well

defined and dominant, and is to be ascertained by reference to the laws and legal precedents and

not from general considerations of supposed public interests."  *United Paperworkers Int'l Union*

*v. Misco, Inc.*, 484 U.S. 29, 43 (1987), quoting *W.R. Grace*, 461 U.S. at 766 (internal quotations

---

[6] Likewise, Arbitrator Kehoe failed to identify a single statement or fact that could support a finding that Ms. Denson violated the NDA by anything said on her Twitter of GoFundMe pages.

omitted).  The court in *Consolidated Edison v. Utility Workers' Union of Am.*, No. 95-cv-1672, 1996 U.S. Dist. LEXIS 9182, at *6 (S.D.N.Y. July 3, 1996) (also available on Westlaw at 1996 WL 374143) described the analytic process as follows:

> To determine whether an arbitration award is contrary to public policy, the first step is to identify the public policy at issue. The doctrine is only applicable where the public policy is well-defined and dominant as "ascertained by reference to the laws and legal precedents and not from general considerations of supposed interests."  The determination of the relevant public policy is for the court.  Once the public policy is identified, the question becomes whether enforcement of the arbitration award would violate that policy.

(citations omitted).

In this instance the public policy at issue is set forth in the legion of federal, state and local statutes that prohibit retaliation against employees for bringing or participating in proceedings to oppose unlawful workplace conduct.  In the case of sex discrimination and harassment as Ms. Denson alleges in the State Court action, laws on the federal, state and local level prohibit the Campaign from retaliating against Ms. Denson for asserting such claims in court or before an administrative agency:  Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-3(a); the New York State Human Rights Law, Executive Law §296(7); and NYCHRL, NYC Admin. Code §8-107(7).  Numerous other laws contain comparable provisions protecting employees from retaliation for bringing or participating in proceedings to redress unlawful workplace conduct.  *See*, *generally*, *Fact Sheet: Retaliation Based on Exercise of Workplace Rights Is Unlawful*, published jointly by the United States Department of Justice, National Labor Relations Board, United States Department of Labor and the Equal Employment Opportunity Commission (copy provided at Bowles Dec. Ex. 12).  These are fundamental provisions of federal, state and local employment and civil rights laws designed to empower employees to enforce the law without fear of retribution, not mere considerations of public interest.

Arbitrator Kehoe's awards violate these bedrock public policies by sanctioning weaponization of the NDA to retaliate against an employee like Ms. Denson – who did nothing more than exercise her right to bring a statutory sex discrimination and harassment claim pursuant to NYCHRL.  The Campaign's Demand for Arbitration leaves no doubt on this: it brought the Arbitration contending Ms. Denson "breached her obligations by publishing certain confidential information and disparaging statements *in connection with a lawsuit she filed against claimant in New York Supreme Court*."  Bowles Dec. Ex. 2 (emphasis added).

Very simply, if Ms. Denson had not sued for sex discrimination and harassment, there would be no Arbitration.  The Campaign also makes clear what it wants from Ms. Denson as a result of her decision to pursue a sex discrimination and harassment suit: "compensatory damages, punitive damages; and all legal fees and costs incurred in connection with this arbitration."  It is hard to imagine a more flagrant, *in terrorem* tactic to discourage Ms. Denson, or any other employee, contractor or volunteer who signed an identical NDA, from pursuing any kind of claim of workplace misconduct.  As Arbitrator Kehoe's awards authorize and reward such retaliation against an individual for pursuing her workplace rights, the awards should be vacated as violative of public policy.

## IV.    **CONCLUSION**

For the foregoing reasons, and for the reasons set forth in the accompanying declarations and exhibits, Ms. Denson once again respectfully urges the Court to deny the Campaign's motion to confirm arbitration awards and, to the extent the Court considers the merits, to grant her cross-motion to vacate.

Dated: New York, New York
       January 18, 2019


THE LAW OFFICE OF DAVID K. BOWLES, PLLC


David K. Bowles
14 Wall Street, 20th Floor
New York, New York 10005
Tel. (212) 390-8842
Fax (866) 844-8305
DKB@LawDKB.com

THE LAW OFFICE OF MAURY B. JOSEPHSON, P.C.


Maury B. Josephson, Esq.
626 RXR Plaza
Uniondale, New York 11556
Tel. (516) 343-0090
Fax (516) 977-1315
Email: mbjlaw@verizon.net

*Attorneys for the Plaintiff*