**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JESSICA DENSON<br><br>Plaintiff,<br><br>v.<br><br>DONALD J. TRUMP FOR PRESIDENT, INC.<br><br>Defendant. | Civil Action No. 18-cv-2690 (JMF)<br><br>**SUPPLEMENTAL MEMORANDUM OF LAW – ADDITIONAL PUBLIC POLICY GROUNDS FOR VACATING ARBITRATION AWARDS** |

THE LAW OFFICE OF DAVID K. BOWLES, PLLC
David K. Bowles
14 Wall Street, 20th Floor
New York, New York 10005
Tel. (212) 390-8842
Fax (866) 844-8305
David@LawDKB.com

THE LAW OFFICE OF MAURY B. JOSEPHSON, P.C.
Maury B. Josephson
626 RXR Plaza
Uniondale, New York 11556
Tel. (516) 343-0090
Fax (516) 977-1315
Email: mbjlaw@verizon.net

*Attorneys for Plaintiff Jessica Denson*

**TABLE OF CONTENTS**


Page

I. PRELIMINARY STATEMENT ........................................................... 1

II. ARGUMENT ........................................................................... 1

a. The NDA Is an Illegal Agreement for These Additional Reasons .......... 1

1. The NDA Is So Vague that an Employee Cannot Know if He or She Has Violated It ..................................... 1

2. As a Restrictive Covenant, the NDA Lacks a Legitimate Purpose, and Has No Temporal or Geographic Limitation ......... 3

3. The NDA Operates as a Governmental Prior Restraint On Speech ................................................................. 4

III. CONCLUSION ........................................................................ 6

# TABLE OF AUTHORITIES

Page

*Arthur J. Gallagher & Co. v. Marchese*, 96 A.D.3d 791 (2[d] Dept 2012) .................. 4
*Ash v. Bd. of Managers of 155 Condominium*, 44 A.D.3d 324 (1st Dept 2007) ........... 4
*Ashland Mgt. Inc. v. Altair Investments NA, LLC,* 59 A.D.3d 97
(1st Dep't 2008), *aff'd as mod.*, 14 N.Y.3d 774 (2010) .............................. 3
*BDO Seidman v. Hirshberg*, 93 N.Y.2d 382 (1999) ........................................................ 3
*Delta Enter. Corp. v. Cohen*, 93 A.D.3d 411 (1st Dep't 2012) ..............................4
*Michael G. Kessler & Assoc., Ltd. v. White*, 28 A.D.3d 724 (2[d] Dept 2006) ............... 3
*Nebraska Press Assn. v. Stuart*, 427 U.S. 539 (1976) ........................................... 4
*Reed, Roberts Assoc. v. Strauman*, 40 N.Y.2d 303 (1976) ..................................... 4
*Stanley Tulchin Assoc., Inc. v. Vignola*, 186 A.D.2d 183 (2[d] Dept 1992) .................. 2

## II. PRELIMINARY STATEMENT

Plaintiff Jessica Denson ("Ms. Denson") respectfully submits this Supplemental Memorandum of Law for the reasons set forth in her letter motion dated today. This Supplemental Memorandum sets forth additional grounds for *vacatur* of the awards (the "Awards") of L. Paul Kehoe in *Donald J. Trump for President, Inc. v. Denson*, American Arbitration Association ("AAA") Case No. 01-17-0007-6454 (the "Kehoe Arbitration") on the ground that they violate public policy because the non-disparagement and non-disclosure agreement ("NDA") on which they are based is an illegal agreement. Although the grounds previously argued are more than enough to vacate the Awards, Ms. Denson respectfully requests that the Court consider these grounds, which supplement those argued to the Court in Point III.c.2 of Ms. Denson's Memorandum of Law dated January 18, 2019.

## III. ARGUMENT

### a. The NDA Is an Illegal Agreement for These Additional Reasons

#### 1. The NDA Is So Vague that an Employee Cannot Know if He or She Has Violated It

The definitional provisions of the NDA are so vague, and so broad, that an employee cannot possibly know in advance whether any kind of conduct – including making protected complaints of illegal conduct to government agencies such as the Equal Employment Opportunity Commission – violates it. Simply put, a violation occurs whenever Donald J. Trump for President, Inc. (the "Campaign"), or Donald Trump or a Trump family member, says it does.

Examples of the NDA's unlawfully vague definitions include the following:

- It defines "Confidential Information" as, *inter alia*, "all information . . . that Mr. Trump insists remain private or confidential . . . ." NDA at ¶ 6(a);[1]

- It defines "Family Member Company" as "any entity . . . that . . . was created for or for the benefit of any Family Member or is controlled or owned by any Family Member." *Id.* at ¶ 6(c).

- It binds Ms. Denson "not to disclose . . . any Confidential Information" and "not to use any Confidential Information in any way detrimental to" Mr. Trump, his family, or any Family Member Company. *Id.* at ¶ 1.

- It forbids the disclosure of Confidential information "[d]uring the term of your service and *at all times thereafter*." *Id.* at ¶ 1 (emphasis added).

- It forbids any disparagement of, *inter alia*, Mr. Trump or any Family Member Company, and it does so "[d]uring the term of your service and *at all times thereafter*." *Id.* at ¶ 2 (emphasis added).

- It allows permissive arbitration of any claims "arising under or relating to" the NDA, requiring that "any dispute arising under or relating to this agreement *may, at the sole discretion of each Trump Person*, be submitted to binding arbitration." *Id.* at ¶ 8(b) (emphasis added).

- "Trump Person" is defined to include Mr. Trump, his family members and any Trump Company. *Id.* at ¶ 6(g).

- "Trump Company" is defined to include any company that "was created by or for the benefit of Mr. Trump or is controlled or owned by Mr. Trump." *Id.* at ¶ 6(c).

Contrary to these 'heads I win, tails you lose' definitions, New York courts[2] do not allow confidentiality agreements to cover anything in the universe the beneficiary of the clause says it does. Rather, such provisions will only be enforced as necessary to protect legitimate interests of the employer. In *Stanley Tulchin Assoc., Inc. v. Vignola*, 186 A.D.2d 183, 185 (2d Dept 1992), the court stated that confidentiality clauses will be enforced "only to the extent necessary to

---

[1] A copy of the NDA is found in the record as Exhibit 4 to the Declaration of David K. Bowles submitted in opposition to the Campaign's motion to confirm the Awards and Ms. Denson's cross-motion to vacate them. Docket No. 39.

[2] Public policy challenges to the NDA's legality based on bedrock common law principles violated by the NDA are presented based on New York law, as the NDA provides for the application of New York law. *Id.* ¶ 8(a).

protect the employer from unfair competition which stems from the employee's use or disclosure of trade secrets or confidential customer lists . . . ." The Campaign nowhere contends that Ms. Denson disclosed any trade secret or confidential customer information – only that she complained of discrimination and criminal and tortious conduct against her. Accordingly, the NDA goes far beyond what the law allows – the restriction on disclosure is not based on the Campaign's legitimate interests, but on its whims. *See also Michael G. Kessler & Assoc., Ltd. v. White*, 28 A.D.3d 724, 725 (2d Dept 2006) (the law limits restrictive covenants, including confidentiality agreements to restrictions "necessary to protect the employer's use of trade secrets or confidential customer information").

No present or former employee of the Campaign is able, from the quoted definitions, to know whether any statement – including those contained in protected legal filings under laws prohibiting discrimination, harassment and retaliation – violates the NDA. Yet these are exactly the provisions and definitions on which the Campaign relied in bringing the Kehoe Arbitration, and on which Arbitrator Kehoe relied in rendering the Awards. The Court should therefore apply these legal principles to vacate the Awards.

2. As a Restrictive Covenant, the NDA Lacks a Legitimate Purpose, and Has No Temporal or Geographic Limitation

Confidentiality agreements – such as the NDA – are a form of post-employment restrictive covenant. *Ashland Mgt. Inc. v. Altair Investments NA, LLC,* 59 A.D.3d 97, 102 (1st Dep't 2008), *aff'd as mod.*, 14 N.Y.3d 774 (2010). Applying bedrock principles of common law and public policy, restrictive covenants may only be enforced if reasonable, *i.e.* "only if it: (1) is no greater than is required for the protection of the legitimate interest of the employer, (2) does not impose undue hardship on the employee, and (3) is not injurious to the public." *BDO Seidman v. Hirshberg*, 93 N.Y.2d 382, 388-89 (1999).

The NDA fails at the first level of the inquiry – they lack a legitimate purpose recognized at law – and each subsequent level thereafter. An employer's interests justifying a restrictive covenant are limited "to the protection against misappropriation of the employer's trade secrets or of confidential customer lists, or protection from competition by a former employee whose services are unique or extraordinary." *Arthur J. Gallagher & Co. v. Marchese*, 96 A.D.3d 791, 792 (2d Dept 2012). No such interest is present here; there is no protectable interest in imposing an *in terrorem* clause on employees and former employees that subjects them to liability for disclosing facts and circumstances that may constitute sex discrimination or other workplace wrongs.

And even if the Campaign had a legitimate protectable interest capable of enforcing its NDA, the NDA is unreasonable as lacking any geographical or temporal limitations. *Ashland*, 59 A.D.3d at 102; *see also Reed, Roberts Assoc. v. Strauman*, 40 N.Y.2d 303, 307 (1976) ("a restrictive covenant will only be subject to specific enforcement to the extent that it is reasonable in time and area"); *Delta Enter. Corp. v. Cohen*, 93 A.D.3d 411, 412 (1st Dep't 2012) (restrictive covenants must be "temporally and geographically reasonable and necessary to protect plaintiff's legitimate business interests").

3. The NDA Operates as a Governmental Prior Restraint on Speech

The NDA is also an illegal agreement on constitutional grounds, because it operates as a prior restraint on speech. "A 'prior restraint' on speech is 'a law, regulation or judicial order that suppresses speech—or provides for its suppression at the discretion of government officials—on the basis of the speech's content and in advance of its actual expression." *Ash v. Bd. of Managers of 155 Condominium*, 44 A.D.3d 324, 324 (1st Dept 2007). New York courts recognize that such prior restraints are "the most serious and the least tolerable infringement on First Amendment rights." *Id.*, quoting *Nebraska Press Assn. v. Stuart*, 427 U.S. 539, 559 (1976).

Naturally the federal and New York Constitutions protect speech against governmental, not private, action. However, the Campaign's nominal status as a private entity does not allow it to evade the constitutional violation because the Campaign is being used as a cutout for the President, a government actor. In plain sight, the President of the United States and his administration are using the Campaign NDA to suppress political speech, thus effectively making the Campaign a *de facto* government actor, and the NDA an illegal prior restraint.

As an example, former campaign worker Cliff Sims published a book called *Team of Vipers* on January 29, 2019. On the same day, the President tweeted:

> A low-level staffer that I hardly knew named Cliff Sims wrote yet another boring book based on made up stories and fiction. He pretended to be an insider when in fact he was nothing more than a gofer. He signed a non-disclosure agreement. He is a mess!

https://twitter.com/realDonaldTrump/status/1090244651578204160.

Immediately thereafter, on the same day, a high-level Campaign representative, Michael Glassner, tweeted that "[t]he Trump campaign is preparing to file suit against Cliff Sims for violating our NDA." https://twitter.com/michaelglassner/status/1090249001746747392. The NDA is thus being weaponized by the President as the purest form of suppression of political speech imaginable. The fact that he is using a putatively private entity, the Campaign, and a private agreement, the NDA, to do so does not remove the illegality and the necessity of vacating the Awards as being based on an illegal agreement that operates as a prior restraint on constitutionally protected speech.[3]

---

[3] An additional reason for invalidity, previously raised before this Court in Ms. Denson's opposition to the motion to vacate, is that the Campaign apparently did not execute the NDA until after the litigation began. *See* Declaration of Jessica Denson dated January 18, 2019 (Dkt. 38) at ¶ 12. On March 25, 2019, in response to the addition of an additional class action representative, the Campaign argued to the AAA that such an unsigned agreement is unenforceable.

## IV. CONCLUSION

For the foregoing reasons, and for the reasons set forth in prior briefing on the Campaign's motion to confirm the Awards and Ms. Denson's cross-motion to vacate them, Ms. Denson once again respectfully urges the Court to deny the Campaign's motion to confirm arbitration awards and, to the extent the Court considers the merits, to grant her cross-motion to vacate.

Dated: New York, New York
May 28, 2019

THE LAW OFFICE OF DAVID K. BOWLES, PLLC

______________________________
David K. Bowles
14 Wall Street, 20th Floor
New York, New York 10005
Tel. (212) 390-8842
Fax (866) 844-8305
DKB@LawDKB.com

THE LAW OFFICE OF MAURY B. JOSEPHSON, P.C.

______________________________
For Maury B. Josephson, Esq.
626 RXR Plaza
Uniondale, New York 11556
Tel. (516) 343-0090
Fax (516) 977-1315
Email: mbjlaw@verizon.net

*Attorneys for the Plaintiff*